**STARWOOD MANAGEMENT, LLC, BY AND THROUGH Norma GONZALEZ, Appellant**

v.

**Don SWAIM and Rose Walker, L.L.P., Appellees**

No. 05-14-01218-CV

Court of Appeals of Texas, Dallas.

Opinion Filed March 7, 2016.

Rehearing Overruled May 13, 2016

Byron C Keeling, Ross A. Sears II, Houston, TX, for appellants.

Thad D. Spalding, Daniel D. Tostrud, Matthew Last, Morgan McPheeters, Dallas, TX, for appellees.

Before Justices Lang, Brown, and O'Neill [1]

1. The Hon. Michael J. O'Neill, Justice, Assigned

## MEMORANDUM OPINION

Opinion by Justice Lang

Appellant, Starwood Management, LLC, brought legal malpractice claims against appellees Rose Walker L.L.P. and Don Swaim. The trial court granted summary judgment in favor of appellees. Appellant raises fifteen issues on appeal. We summarize those fifteen points as: (1) whether the trial court erred in striking the expert affidavits of George Crow and Steve Jumes; (2) whether the trial court erred in concluding there was insufficient evidence to raise a fact issue on the element of causation even without the expert affidavits of Crow and Jumes; and (3) whether the trial court erred in granting summary judgment for appellees on Starwood's breach of fiduciary duty claims on the basis that they sound in negligence. The questions in this appeal turn on whether experts' affidavits submitted by Starwood as to "causation" are conclusory and inadmissible. We conclude the affidavits are conclusory as to the experts' opinions regarding causation. All fifteen issues are decided against appellant. We affirm the judgment of the trial court.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Norma Gonzalez is the owner and sole managing member of the Nevada entity Starwood Management, LLC ("Starwood"). Christian Eduardo "Ed" Esquino–Nunez, a Mexican national, is actively involved in the day-to-day operations of Starwood. On May 31, 2011, Nunez signed an application as Starwood's "manager" to register a 1982 Gulfstream aircraft (the "aircraft") in the name of Starwood with the U.S. Department of Transportation. On February 3, 2012, the aircraft was seized by the U.S. Department of Justice Drug Enforcement Administration ("DEA") at the Tucson International Airport based on what it contended was an illegal registration in violation of 49 U.S.C. § 46306. After the DEA seized the aircraft, Starwood's insurer, Chartis Aerospace, retained Rose Walker L.L.P ("Rose Walker") to recover the aircraft from the DEA. Don Swaim, an attorney employed by Rose Walker, was the attorney who was in charge of pursuing Starwood's claim.

On March 15, 2013, the DEA sent a notice of seizure to Chartis Aerospace, care of Don Swaim, that set out the administrative and judicial procedures for contesting the seizure and seeking return of the aircraft. In a paragraph entitled "TO REQUEST REMISSION OR MITIGATION OF FORFEITURE," the letter stated, "If you want to request the remission (pardon) or mitigation of the forfeiture, you must file a petition for remission or mitigation with the Forfeiture Counsel of the DEA within thirty (30) days of your receipt of this notice." Additionally, a paragraph in the letter entitled "TO CONTEST THE FORFEITURE," stated:

You may contest the forfeiture of the seized property in United States District Court. To do so, you must file a claim with the Forfeiture Counsel of the DEA by April 19, 2012 . . . Your failure to do so will result in the termination of your interest in the asset, and may preclude your contesting the forfeiture of the asset in any judicial proceeding—either civil or criminal—even if such a proceeding has already been commenced or is commenced in the future.

The letter provided the mailing address of the Forfeiture Counsel, and stated "A PETITION, CLAIM, OR OTHER CORRESPONDENCE SHALL BE DEEMED FILED WITH THE FORFEITURE COUNSEL, ASSET FORFEITURE SECTION, WHEN RECEIVED BY THE DEA AT EITHER OF THE ADDRESSES NOTED ABOVE."

On April 12, 2012, Rose Walker forwarded its "Petition for Remission or Mitigation" to the DEA's forfeiture counsel and the U.S. Attorney for the District of Arizona. On June 15, 2012, the DEA served a subpoena on Norma Gonzalez requesting she appear to be "interviewed" and produce documents. When Gonzalez arrived at this "interview," she was accompanied by a criminal defense attorney, invoked her Fifth Amendment rights, "and refused to testify or otherwise cooperate."

On April 18, 2012, Rose Walker's local counsel in Arizona filed a lawsuit on behalf of Starwood in the United States District Court for the District of Arizona. Another attorney at Rose Walker sent a courtesy copy of the complaint to the Forfeiture Counsel on April 20, 2012 by regular mail. The Forfeiture Counsel received a copy of the complaint on April 24, 2012. However, no "claim" was ever filed directly with the DEA's Forfeiture Counsel. On June 21, 2012, the DEA notified Starwood that "no claim has been filed," it had sufficient information to support the forfeiture, and the DEA officially declared the property forfeited to the United States.

The DEA's motion to dismiss the federal court action was granted on December 17, 2012. That court concluded it lacked subject matter jurisdiction over the case because Starwood's complaint was untimely, it having been filed on April 18, 2012, prior to the DEA's April 19, 2012 deadline, and the Forfeiture Counsel of the DEA did not receive a copy of the complaint until April 20, 2012.

On May 23, 2013, by letter to Swaim and Rose Walker, the DEA denied Starwood's petition for remission or mitigation, noting that a petitioner must show two things to be entitled to remission:

1. A valid, good faith, and legally cognizable interest in the seized property as an owner or lienholder; and

2. Qualification as an "innocent owner" within the meaning of the applicable forfeiture statute.

In the letter, the DEA stated its conclusion that Starwood could not show a legally cognizable interest in the aircraft because Nunez's involvement with Starwood made it ineligible to register the aircraft. The DEA emphasized that federal law requires two thirds of a corporation's directors or managers to be United States citizens in order to register an aircraft. While the Nevada Secretary of State records showed Gonzalez to be the managing member of Starwood, the DEA noted in its letter that Nunez signed the aircraft's registration application as a "manager" of Starwood.

On June 23, 2013, Rose Walker filed a motion to reconsider the denial of the Petition for Remission or Mitigation. Attached to the motion were the declarations of Gonzalez and Nunez which Starwood contends established that Gonzalez was the only "member" and manager of Starwood, that Nunez was not a "member," and accordingly, that registration of the aircraft by Starwood was not prohibited. Starwood argued that Nunez's signature on the registration application was a mistake that occurred through no fault of Gonzalez, asserting that Gonzalez was an "innocent owner."

In response, the DEA notified Starwood on July 12, 2013 that it was reviewing the request for reconsideration, but needed to "interview" Gonzalez "as the sole representative of Starwood Management" about the "activities of Starwood." On July 17, 2013, Swaim emailed Gonzalez regarding the DEA's request to "interview" her, stating that Gonzalez's "compliance with the DEA's interview demand is crucial to both the judicial and administrative remedies" and that her "willingness to be interviewed by the DEA is crucial to Starwood's efforts

to get the aircraft back." On July 29, 2013, Gonzalez responded to Swaim agreeing to be "interviewed" in San Diego between August 12, 2013 and August 16, 2013. On August 1, Gonzalez emailed Swaim again to clarify that she would "grant an interview in San Diego to discuss [the] registration issue, Ed Nunez's role in Starwood, and [Starwood's] compliance with FAA's requirements for registration of aircraft in the U.S." Gonzalez stated these topics were the only topics she would be "willing to talk about without claiming the 5th."

On August 2, Swaim emailed Elizabeth Wiggington, the DEA's investigator, advising her that Gonzalez would agree to be "interviewed" on the specific topics Gonzalez had specified. The DEA scheduled Gonzalez's "interview" for the week of August 12, but asked that Gonzalez sign and return a waiver of her Fifth Amendment rights as Gonzalez had previously invoked her Fifth Amendment rights in her earlier DEA "interview."

In response to the DEA request for a waiver, Gonzalez emailed Swaim on August 12, stating "The DEA's request is too broad and not even close to what I offered. I am not willing to sign a blanket waiver of my 5th Amendment rights." Swaim emailed the DEA the next morning and said that it was "not reasonable or appropriate to ask that [Gonzalez] be interviewed on other topics, and prospectively waiving all her rights without regard to the topic being asked." The DEA responded to Swaim on the same day cancelling the "interview," stating that "it is normal procedure to request a signed waiver of rights to protect the government's ability to use her statements against her in future court proceedings and to avoid any misconceptions on her part," and that an "interview" of Gonzalez absent the waiver "would not be produc-

tive." On October 23, 2013, the DEA denied the request for reconsideration of the Petition for Remission or Mitigation.

On October 23, 2013, Starwood sued Swaim and Rose Walker for failing to secure return of the aircraft alleging negligence and breach of fiduciary duty. Starwood claims they breached their fiduciary duty by "trying to insist that Plaintiff give unlimited and unrestricted testimony to the Federal Government on issues unrelated to the claims at issue, to cover up their negligence, errors and omissions in the case."

On June 27, 2014, Swaim and Rose Walker filed a traditional and no-evidence motion for summary judgment, arguing that there was no evidence that their alleged negligence was a proximate cause of Starwood's inability to recover the aircraft. Additionally, the appellees asserted that, as a matter of law, any negligence on the part of Swaim or Rose Walker could not be the proximate cause of Starwood's inability to recover the aircraft, because Gonzalez refused to cooperate with the DEA and its discovery process by invoking her Fifth Amendment privilege and refusing to be "interviewed." The appellees also moved for summary judgment on the related breach of fiduciary claim, arguing that it was nothing more than a recast claim for legal malpractice under an alternative label, and that it was unsupported by evidence of causation.

Starwood responded and presented the affidavit of an expert witness, George Crow, who opined that had Rose Walker properly invoked the judicial forfeiture remedy, "thus forcing the government to defend the seizure of [the aircraft] in federal court," the aircraft would have been returned. Crow's pivotal conclusion is contained in ¶ 19 of his affidavit, in which he states:

It is my belief that had Rose Walker properly file [sic] the verified claim with the DEA Forfeiture Counsel (which they did not), thus forcing the government to defend the seizure of N30LF in federal court, then the Aircraft would have been returned in the same manner as the five (5) so far.

Crow based his opinion on his experience as legal counsel for Starwood in successfully recovering five of six aircraft that were seized by the DEA. He contends he succeeded in recovering these aircraft simply by initiating the proper judicial contest to the forfeiture claims by the DEA. In two of those cases, Crow stated that the government declined to file suit in federal court. In three other cases, "the aircraft were or will be returned, pursuant to settlement agreements wherein a nominal fine was paid to the United States marshall Service." Crow concluded, without addressing the specific facts of any of the referenced cases, that it was his "belief that the five aircraft were recovered quickly (between 6 to 10 months) because the government's case for seizure was weak and not supported by reliable evidence."

As part of its response to the motion for summary judgment, Starwood presented an additional affidavit of another expert witness, Steve Jumes. The Jumes affidavit relied heavily on the Crow affidavit, also referencing the six aircraft seizure cases that Crow's affidavit discussed.

Rose Walker objected to the two expert witness affidavits and the supporting documentation attached to Crow's affidavit, asserting that the statements in the affidavits were "speculative, hearsay, conclusory, not relevant, Rule 403 more prejudicial than probative, and not competent summary judgment testimony." In an order dated August 25, 2014, without elaboration, the trial court sustained appellees' objections "to Plaintiff's summary judgment evi-

dence," ordered that the evidence subject to appellees' objections would not be considered as summary judgment evidence, and granted summary judgment for the appellees. Starwood now appeals.

## II. STANDARDS OF REVIEW

■ We review rendition of a summary judgment de novo. *Mid–Century Ins. Co. v. Ademaj*, 243 S.W.3d 618, 621 (Tex. 2007). In reviewing a traditional summary judgment in favor of a defendant, "we determine whether the defendant conclusively disproved an element of the plaintiff's claim or conclusively proved every element of an affirmative defense." *Smith v. Deneve*, 285 S.W.3d 904, 909 (Tex. App.—Dallas 2009, no pet.). A matter is conclusively proved if "ordinary minds could not differ as to the conclusion to be drawn from the evidence." *Estate of Hendler*, 316 S.W.3d 703, 707 (Tex.App.—Dallas 2010, no pet.).

■ In reviewing a no-evidence summary judgment in favor of a defendant, we apply the same legal sufficiency standard used to review a directed verdict. *See* TEX. R. CIV. P. 166(a)(i); *Gen. Mills Rests., Inc. v. Tex. Wings, Inc.*, 12 S.W.3d 827, 832–33 (Tex.App.—Dallas 2000, no pet.). We must determine whether the nonmovant produced more than a scintilla of probative evidence to raise a fact issue on the material questions presented. *Bever Props., L.L.C. v. Jerry Huffman Custom Builder, L.L.C.*, 355 S.W.3d 878, 885 (Tex. App.—Dallas 2011, no pet.). More than a scintilla of evidence exists if the evidence would allow "reasonable and fair-minded people to differ in their conclusions." *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004). "Evidence that is so slight as to make any inference a guess is in legal effect no evidence." *Id.* In reviewing both a traditional and a no-evidence summary judgment, "we take evidence fa-

vorable to the nonmovant as true, and indulge every reasonable inference and resolve every doubt in favor of the nonmovant." *Deneve*, 285 S.W.3d at 909.

We review the exclusion of summary judgment evidence for an abuse of discretion. *Barraza v. Eureka Co.*, 25 S.W.3d 225, 228 (Tex.App.—El Paso 2000, pet. denied). A trial court abuses its discretion when it acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). The fact that a trial court may decide a matter within its discretion in a different manner than we would does not demonstrate that an abuse of discretion has occurred. *Id.* at 242.

Finally, whether certain allegations asserted against an attorney and labeled as breach of fiduciary duty or fraud are actually claims for professional negligence is a question of law to be reviewed by the court de novo. *See Won Pak v. Harris*, 313 S.W.3d 454, 457 (Tex.App.—Dallas 2010, pet. denied).

## III. EXCLUSION OF STARWOOD'S SUMMARY JUDGMENT AFFIDAVITS

In support of its response to appellees' motion for summary judgment, Starwood provided the expert affidavits of Crow and Jumes. The central purpose of those affidavits was to support Starwood's claim that appellees' negligence "caused" its loss of the aircraft. The appellees objected to the Crow and Jumes affidavits below on the basis that they are "speculative, hearsay, conclusory, not relevant, Rule 403 more prejudicial than probative, and not competent expert witness summary judgment testimony." We address six of Starwood's fifteen issues raised on appeal in our analysis of whether the trial court properly sustained appellees' objections to the Crow and Jumes affidavits.[2]

We first address Starwood's contention that the expert affidavits are not conclusory. Starwood contends the experts have done "more than simply state a conclusion without any explanation or ask jurors to 'take my word for it'" and when the expert "explains the basis of the witness's statements to link conclusions to the facts." According to Starwood, Crow "stated and documented readily controvertible facts with which he was personally familiar, relating to other proceedings on which he based his opinion, and his conclusions were logically drawn from those experiences." Appellees respond, saying that the expert affidavits, Starwood's only evidence on the

2. "A.1. Did the trial court abuse its discretion in striking the expert opinion affidavit of Plaintiff's expert, George E. Crow, where Defendants' only articulated argument was that causation cannot be proved by reference to other proceedings and that the facts on which Crow relied (*i.e.*, his success in recovering five other planes seized from Plaintiff) were not sufficiently similar to support Crow's opinion that Aircraft would have been recovered if Defendants had timely filed a claim, where:

(a) the methodology of opinion on causation by comparing results in similar cases was approved in *Elizondo v. Krist*, 415 S.W.3d 259 (Tex. 2013);

(b) Defendants' argument that the other cases were not substantially similar is a challenge to the factual basis for

Crow's opinion and goes only to the weight of the evidence, not its admissibility;

(c) even if the trial court could properly consider whether the other proceedings were sufficiently similar, Defendants' dissimilarity arguments relied on "facts" contradicted by the record; and

(d) Defendants' other objections were boilerplate and were offered without any explanation or citation to facts or law?

. . .

A.3. Did the trial court abuse its discretion in striking the affidavit of Plaintiff's other expert, Steve Jumes, on the same grounds as the Crow affidavit?"

element of causation, are conclusory because "Crow failed to provide any factual support for his conclusion that because he had recovered other aircraft seized by the DEA, Starwood would have likewise recovered this Aircraft."

### A. Applicable Law—Attorney Negligence and Causation

To recover on a claim for legal malpractice, the plaintiff must establish the attorney's breach proximately caused the plaintiff's injuries. *Alexander v. Turtur & Assocs., Inc.*, 146 S.W.3d 113, 117 (Tex. 2004). When the plaintiff alleges that some "act or omission" on the attorney's part "caused an adverse result in prior litigation, the plaintiff has the burden to prove that, but for his attorney's negligence, he would have prevailed in the underlying case." *See Tommy Gio, Inc. v. Dunlop*, 348 S.W.3d 503, 507, 508 (Tex. App.—Dallas 2011, pet. denied). To meet this burden, the plaintiff is required to present evidence explaining the legal significance of the attorney's alleged failure and the impact this failure had on the underlying action. *See Indus. Clearinghouse, Inc. v. Jackson Walker, L.L.P.*, 162 S.W.3d 384, 388 (Tex.App.—Dallas 2005, pet. denied).

The Texas Rules of Civil Procedure require that affidavits submitted as summary judgment evidence set forth facts that would be admissible in evidence. *Rabe v. Dillard's Inc.*, 214 S.W.3d 767, 769 (Tex.App.—Dallas 2007, no pet.) (citing Tex.R. Civ. P. 166a(f)). Expert testimony is generally required in a legal malpractice case to establish causation. *Alexander*, 146 S.W.3d at 119–20. At times, an attorney's expert testimony alone is not sufficient to establish causation. *See Allbritton v. Gillespie, Rozen, Tanner & Watsky, P.C.*, 180 S.W.3d 889, 894 (Tex.App.—Dallas 2005, pet. denied) (op. on reh'g).

Where the expert's testimony will be excluded at trial on the merits, it will be excluded from a summary judgment proceeding. *Ersek v. Davis & Davis, P.C.*, 69 S.W.3d 268, 274 (Tex.App.—Austin 2002, pet denied).

### B. Applicable Law—Conclusory Statements

An expert must be qualified and provide a reasoned basis for his opinion. *Allbritton*, 180 S.W.3d at 894. A conclusory statement from an expert witness is insufficient to raise a question of fact to defeat summary judgment. *Elizondo v. Krist*, 415 S.W.3d 259, 264 (Tex. 2013) (quoting *McIntyre v. Ramirez*, 109 S.W.3d 741, 749–50 (Tex. 2003)). Instead, expert testimony will support or defeat summary judgment only if it is "[c]lear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted." *See Wadewitz v. Montgomery*, 951 S.W.2d 464, 466 (Tex. 1997) (citing Tex.R. Civ. P. 166(a)(c)).

A statement is conclusory if it "does not provide the underlying facts to support the conclusion." *Brown v. Brown*, 145 S.W.3d 745, 751 (Tex.App.—Dallas 2004, pet. denied). To avoid being conclusory, "[t]he expert must explain the basis of his statements to link his conclusions to the facts." *Earl v. Ratliff*, 998 S.W.2d 882, 890 (Tex. 1999). An expert must also "[e]xplain how and why the negligence caused the injury." *Jelinek v. Casas*, 328 S.W.3d 526, 536 (Tex. 2010).

"A claim will not stand or fall on the mere *ipse dixit* of a credentialed witness." *Elizondo*, 415 S.W.3d at 264. Expert testimony fails to create a fact issue if there is "simply too great an analytical gap between the data and the opinion proffered." *Id.* This Court is not re-

quired "to ignore fatal gaps in an expert's analysis or assertions." *Id.* In a legal-malpractice case, even where an attorney-expert is qualified to give expert testimony, his affidavit "cannot simply say, 'Take my word for it. . . .'" *Id.*

In *Elizondo*, the Supreme Court of Texas considered the sufficiency of an expert affidavit in a legal malpractice case where lawyers negotiated a settlement that was alleged to be insufficient. 415 S.W.3d at 261. The Court held the analysis of the expert that attempted to compare other settlements in the mass tort cases brought against BP was insufficient because the expert did not actually "undertake to compare the . . . settlement with other actual settlements obtained in the BP litigation." *Id.* at 266. The Supreme Court said it agreed with the Court of Appeals' statement, "He also fails to link settlement amounts to specific injuries and circumstances, and provides no comparison of settlement amounts of similar claims. Thus, Gonzales's affidavit is conclusory and speculative." *Id.*

## C. Application of the Law to the Facts

■ The Crow affidavit appears to address the element of "causation" by describing the other aircraft seizure cases in paragraphs 11 through 21.[3] We determine that the Crow affidavit is conclusory.

3. Those paragraphs are as follows:

"11. Following the seizure of N39LF, the DEA seized six (6) more aircraft being operated by Starwood Management, LLC. These six (6) aircraft were seized in the period ranging from September 2012 to October 2013.

12. I personally handled the recovery efforts of the six (6) other aircraft seized by the DEA. Out of the six (6) seized aircraft, three have been returned; two aircraft are scheduled to be returned on July 23, 2014; and one is pending in litigation in the U.S. District Court for the Eastern District of Texas, which commenced in April of 2014.

13. The attached chart is true and correctly summarizes the outcomes of each of the seven (7) aircraft seized by the DEA. The supporting documents, attached with the chart, are true and correct copies of the documents surrounding the seizure and disposition of each of the seven seized aircraft.

14. After I received a copy of the seizure notice for each of the six (6) seized aircraft, I contested each of the seizures by following the directions on the seizure notices. For each case, I filed a verified claim with the DEA Forfeiture Counsel at the address, and within the time limit, provided on the notice. The DEA then had the option to either refer the case to the local

United States Attorney's Office in the district where the aircraft was seized, or to return the aircraft. For all six (6) aircraft, the DEA referred the case to the local United States Attorney's Office for handling.

15. To date, two of the five (5) aircraft have been returned with no conditions because the United States Attorney's Office declined to file suit in federal court. Three of the five aircraft were or will be returned, pursuant to settlement agreements wherein a nominal fine of $5,000.00 was paid to the United States Marshals Service.

16. It is my belief that five (5) aircraft were recovered quickly (between 6 to 10 months) because the government's case for seizure was weak and not supported by reliable evidence.

17. I did not submit a Request for Remission/Mitigation to the DEA for any of the six (6) aircraft because a petition would have placed the burden on us to prove our need for remission or mitigation; and the outcome of the petition would solely have been at the discretion of the DEA, with no legal rights to appeal to any court of law.

18. The six (6) other aircraft were all seized under the same aircraft registration law cited in the seizure notice for N39LF.

19. It is my belief that had Rose Walker properly file [sic] the verified claim

In paragraph 16 of the affidavit, Crow states, "It is my belief that five (5) aircraft were recovered quickly (between 6 to 10 months) because the government's case for seizure was weak and not supported by reliable evidence." Crow cites no facts of any kind to support his conclusion that the government's case was weak. Further, in paragraph 19 of the affidavit, Crow concludes "It is my belief that had Rose Walker properly file [sic] the verified claim with the DEA Forfeiture Counsel (which they did not), thus forcing the government to defend the seizure of N39LF in federal court, then the Aircraft would have been returned in the same manner as the five (5) so far." In stating his conclusions, Crow makes no case-by-case comparison of the facts in the other aircraft seizures cases the facts that are the subject of this case. Instead, the affidavit says no more than that Crow, an experienced attorney, has considered the relevant facts and concluded that the aircraft would have been returned had Rose Walker filed a verified claim with the DEA Forfeiture Counsel.

The statement of the Supreme Court in *Elizondo* about the deficiency of the expert affidavit before them is applicable in this case, "The problem is the lack of a demonstrable and reasoned basis on which to evaluate his opinion." *Elizondo*, 415 S.W.3d at 265. Accordingly, the trial court properly sustained appellees' objections to Crow's conclusory opinion as to causation contained in paragraphs 16 and 19 of Crow's affidavit.

We now address the Jumes affidavit. The portion of the Jumes affidavit that addresses causation is contained in paragraph 2.[4] In particular, Jumes states had

---

with the DEA Forfeiture Counsel (which they did not), thus forcing the government to defend the seizure of N39LF in federal court, then the Aircraft would have been returned in the same manner as the five (5) so far.

20. All seven (7) seized aircraft were seized pursuant to the same statute regarding registration. I followed the instructions and complied with the deadlines set forth in the seizure notices attached hereto. By following those procedures, I have successfully recovered five (5) aircraft. Rose Walker, faced with the same set of facts, failed to comply with the instructions and deadlines, which caused the forfeiture of N39LF to the government.

21. In the six (6) cases I am handling, including the five (5) wherein the government returned the aircraft, the United State Attorney's Office did not asked for [sic], nor require a recorded statement or deposition from Norma Gonzalez in order to release the aircraft."

4. "I have handled government forfeiture and/or seizure cases in the past, and am familiar with this area of the law and the handling of the same. After reviewing the pleadings, Motion for Summary Judgment, Response to Defendants' Motion for Summary Judgment, deposition testimony of the Defendant, as well as the Affidavit of George Crow (attached to Plaintiff's Response to Defendants' Motion for Summary Judgment), all of which are incorporated herein as if set forth fully herein, it is my opinion that Don Swaim was not experienced in handling these types of matters when he represented the Plaintiff, and his own deposition testimony establishes the same. It is my opinion that not only did the Defendants file a defective administrative petition, but they also untimely and improperly filed for judicial relief. As a result, the Court dismissed all claims related to this matter for defective and or untimely filing. It is further my opinion that the defendants' failure to properly file an administrative claim is an omission that falls below a reasonable standard of care. Based on the above, I believe that as a direct result of the Defendants' malpractice, and their errors in failing to properly complete the filings necessary to recover the airplane at issue, the Plaintiff lost the entire value of the airplane, as it was forfeited to the government. It is my opinion that had the Defendants timely and properly filed the appropriate relief for their client, the airplane would have been returned to the Plaintiff because

"Defendants timely and properly filed the appropriate relief for their client, the airplane would have been returned to the Plaintiff because all other airplanes seized under similar legal theories were ultimately returned to the same parties, by the same governmental organizations as is supported by George Crow's Affidavit. . . ."

We determine Jumes's affidavit is conclusory as to causation because, like the Crow affidavit, his attempt to compare the other seizure cases is unsupported by any factual comparisons to establish similarity to the case before us. *See Elizondo*, 415 S.W.3d at 265. In addition to paragraph 2, other portions of the Jumes affidavit recite conclusions that are unsupported by any factual allegations, such as "Don Swaim was not experienced in handling these types of matters when he represented the Plaintiff," and "defendants' failure to properly file an administrative claim is an omission that falls below a reasonable standard of care." On this record, we conclude that the trial court did not abuse its discretion in sustaining appellees' objection to the conclusory affidavits of Crow and Jumes.

As indicated above, appellees asserted the affidavits of Crow and Jumes were objectionable for several reasons in addition to the conclusory nature of the experts' opinions. However, the trial court stated it sustained appellees' objections and struck the affidavits without indicating the grounds. Having determined that the expert affidavits are conclusory as to causation, we need not address the other objections raised by appellees in the trial court. Tex.R.App. P. 47.1("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and *necessary to final disposition* of the appeal.") (emphasis added).

## IV. Starwood's Remaining Summary Judgment Evidence on Causation

■■■ Starwood asserts that the trial court erred in striking Crow's "fact testimony" contained in his affidavit and exhibits H1 through H6 to Crow's affidavit.[5] Specifically, Starwood says:

None of Defendants' objections to Crow's affidavit testimony provided any basis for the trial court to strike or refuse to consider Crow's *factual* testimony . . . An objection to expert testimony does not authorize a trial court to strike anything other than the specific expert testimony that the court found insufficient.

### A. Applicable Law

■■■ Summary-judgment evidence must be presented in a form that would be

---

all other airplanes seized under similar legal theories were ultimately returned to the same parties, by the same governmental organizations as is supported by George Crow's Affidavit which is attached hereto as Exhibit A."

5. Starwood raises these arguments in four issues:

"A.2. Did the trial court abuse its discretion in striking not only Crow's opinion testimony, but also striking Crow's testimony as a fact witness and documents attached as exhibits to his affidavit, when Defendants' objections provided no basis for striking any of this fact evidence?

. . .

B.1. Did the trial court err in granting Defendants' no-evidence motion as to Plaintiff's negligence claim on the ground that there was no evidence of causation, when:
(a) Plaintiff offered the Crow and Jumes affidavits which contained competent and admissible expert testimony on causation, and the trial court improperly struck those affidavits?
(b) Even without the opinion testimony of Crow and Jumes, the fact testimony and documentation attached to Crow's affidavit was sufficient to raise a fact issue on causation, and the trial court improperly struck those affidavits?"

admissible in evidence in a conventional trial proceeding. *See* TEX.R. CIV. P. 166a(f). An expert may testify about facts within his personal knowledge. *Stein v. City of Plano*, No. 05-98-00362-CV, 2000 WL 1230674 (Tex.App.—Dallas Aug. 31, 2000, pet denied). Rule 166a(f) requires those facts be admissible. *See* TEX.R. CIV. P. 166a(f). Where an affidavit does not present "probative evidence of the facts at issue" it is insufficient summary judgment evidence. *See Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996).

In *McIntrye v. Ramirez*, the Supreme Court of Texas struck an entire expert affidavit because the facts presented in the affidavit failed to support the expert's legal conclusion. 109 S.W.3d 741, 749 (Tex. 2003). The Court stated, "While [the expert] purported to have personal knowledge of the facts recited in his affidavit, his statement ... is a legal conclusion with no supporting facts or rationale" and emphasized that "conclusory affidavits are not enough to raise fact issues." *Id.* at 750 (internal citations omitted).

### B. Application of the Law to the Facts

Starwood contends that even without the portions of Crow's or Jumes' affidavits that express opinions, the testimony that remains, consisting of "Crow's fact testimony and supporting exhibits," created a fact issue. Further, Starwood states "even without expert testimony, the records of the other seizure proceedings are

some evidence of the probability that the DEA would not have pursued judicial forfeiture on the Aircraft if the defendants had not been negligent." In its briefing before this court, Starwood does not identify the particular "fact testimony and supporting exhibits" contained in the affidavits or the specific fact issues that it claims are raised. As such, we will not speculate as to what "fact testimony" or "exhibits" create issues or exactly what issues are raised. The point is not adequately briefed. *See Radenovich v. Eric D. Fein, P.C. & Assocs.*, 198 S.W.3d 858, 861 (Tex. App.—Dallas 2006, no pet.) (citing TEX. R.APP. P. 38.1(h) and emphasizing "Failure to ... provide substantive analysis waives an issue on appeal."). Accordingly, there is nothing for us to decide.

## V. FRACTURING OF STARWOOD'S CLAIMS FOR PROFESSIONAL NEGLIGENCE AND BREACH OF FIDUCIARY DUTY

Starwood claims that it was error for the trial court to conclude by either traditional or no-evidence motion for summary judgment that the breach of fiduciary duty claim sounded in negligence.[6] The appellees respond that the "crux of Starwood's breach of fiduciary duty claim is the giving of bad legal advice to Starwood" and is a "recast" negligence claim under an alternative label. *See Won Pak v. Harris*, 313 S.W.3d 454, 458 (Tex.App.—Dallas 2010, pet. denied).

### A. Applicable Law

 The anti-fracturing rule "prevents plaintiffs from converting what are

---

**6.** Starwood raises this argument in two issues:

"B.2. Did the trial court err in granting Defendants' no-evidence motions to Plaintiff's breach of fiduciary duty claim on the ground that there was no evidence of breach or injury to Plaintiff or benefit to Defendant, when (a) Plaintiff's expert Crow attested to the breach, and the trial court improperly struck his affi-

davit, and (b) Defendants' receipt of attorneys' fees is a benefit?

...

C.2. Did the trial court err in granting Defendants' traditional motion as to Plaintiff's breach of fiduciary duty claim on the ground that the claim sounded in negligence, when Plaintiff's breach of fiduciary duty claim does not allege any failure to meet a duty of care?"

actually professional negligence claims against an attorney into other claims such as fraud, breach of contract, breach of fiduciary duty, or violations of the DTPA." *Id.* at 457. The anti-fracturing rule bars claims for breach of fiduciary duty against an attorney where the gravamen of the complaint focuses "on the quality or adequacy of the attorney's representation." *Id.* In contrast, properly asserted claims for an attorney's breach of fiduciary duty "focus on whether the attorney obtained an improper benefit from representing the client and involve the integrity and fidelity of the attorney." *Id.*

In *Won Pak*, the plaintiffs asserted claims for negligence, breach of fiduciary duty, and conspiracy to commit fraud against their attorneys for actions taken by the attorneys in connection with a merger. *Id.* In support of their breach of fiduciary duty claim, plaintiffs asserted that their attorneys "represented them with divided loyalties contrary to his oral promise to treat each person 'equally and fairly' and failed to inform them of the conflict of interest between [plaintiffs] and the other investors as well as other material facts." *Id.* at 457–458. We concluded these allegations did nothing more than "recast" the plaintiffs' claims "for professional negligence under alternative labels." *Id.* at 458.

## B. Application of the Law to the Facts

The plaintiffs' live petition alleges the following in support of its breach of fiduciary duty claim:

Defendants breached their fiduciary duty to Plaintiff by trying to insist that Plaintiff give unlimited and unrestricted testimony to the Federal Government on issues unrelated to the claims at issue, to cover up their negligence, errors and omissions in the case. Defendants now attempt to use Plaintiff's refusal to give such testimony as a defense for their conduct in this case.

 Starwood's allegations complain generally that the appellees "attempted to cover up their negligence, errors and omissions in the case." However, it did not complain in the trial court about any improper benefit, an element of the claim of breach of fiduciary duty, Rose Walker or Swaim received from representing Starwood.[7] *Won Pak*, 313 S.W.3d at 458. Absent a complaint regarding an improper benefit received by Rose Walker or Swaim, Starwood has not alleged facts supporting a cause of action for breach of fiduciary duty. These allegations do no more than restate the plaintiffs' claims for professional negligence under alternative labels. *See Won Pak*, 313 S.W.3d at 458. It is merely alleged that Rose Walker and Swaim failed to exercise the degree of care, skill, or diligence required of a prudent attorney representing Starwood in the DEA's reconsideration of the Petition for Remission or Mitigation. Accordingly, this claim is barred by the anti-fracturing rule.

## VI. Conclusion

We conclude the trial court did not abuse its discretion in striking the conclu-

---

**7.** Starwood asserts for the first time on appeal that Rose Walker's receipt of attorney's fees was an improper benefit received by the appellees. We do not consider this argument because "we generally will not reverse a summary judgment based on an argument that was not expressly presented to the trial court by written response or other document." *See Pinnacle Anesthesia Consultants, P.A. v. Fisher,* 309 S.W.3d 93, 105 (Tex.App.—Dallas 2009, pet. denied).

sory expert affidavits of George Crow and Steve Jumes. Without the expert opinion testimony contained in those affidavits, Starwood has no evidence on the element of causation and the trial court properly granted summary judgment for the appellees. Finally, the trial court did not err when it dismissed Starwood's breach of fiduciary duty claims. The judgment of the trial court is affirmed.