# IN THE SUPREME COURT OF TEXAS

════════════
No. 16-0431
════════════

STARWOOD MANAGEMENT, LLC
BY AND THROUGH NORMA GONZALEZ, PETITIONER,

v.

DON SWAIM AND ROSE WALKER, L.L.P., RESPONDENTS

════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FIFTH DISTRICT OF TEXAS
════════════════════════════════════════════

## PER CURIAM

The question in this legal malpractice case is whether an expert witness affidavit is conclusory regarding causation. The trial court concluded that it is. The court of appeals affirmed. We disagree. We reverse and remand to the court of appeals for further proceedings.

Norma Gonzalez, an American citizen, is the owner and sole managing member of Starwood Management, LLC, a charter aircraft company. Ed Nunez, a Starwood employee who was not a U.S. citizen, registered a 1982 Gulfstream aircraft in Starwood's name and signed the application as Starwood's "Manager." The aircraft was seized by the Drug Enforcement Administration (DEA) pursuant to a federal statute that prohibits a business entity that is owned or controlled by less than 75% U.S. citizens from registering an airplane. 49 U.S.C. §§ 40102(a)(15)(C), 46306(b). Because Nunez signed as manager, the DEA concluded that the aircraft's registration violated the relevant

statutory provisions. Starwood's insurer, Chartis Aerospace Insurance, retained attorney Don Swaim of the Rose Walker, L.L.P. firm to attempt to recover the aircraft.

After the seizure, the DEA sent Starwood a notice containing procedures for challenging the seizure and seeking return of the airplane. There were three options: (1) file suit in federal court, (2) file a Petition for Remission or Mitigation with the DEA Forfeiture Counsel, or (3) do both. Swaim chose to do both.

If the option to challenge the seizure in federal court is pursued, the DEA bears the initial burden to prove by a preponderance of the evidence that the seizure was proper. 18 U.S.C. § 983(c)(1). In order to pursue relief in court, however, notice of claim must be filed with the DEA Forfeiture Counsel within thirty days of receipt of the seizure notice. 28 C.F.R. § 9.4(a). Swaim did not file such a notice on behalf of Starwood. Instead, he simply filed suit to contest the seizure. Because the notice requirement was not met, the case was dismissed.

Swaim did, however, comply with requirements for the alternative procedure of petitioning for remission or mitigation. This procedure involves an in-house review process by the DEA in which the petitioner has the initial burden of establishing a vested legal right to the property and the innocent owner defense. *See* 28 C.F.R. § 9.5. But even if a petitioner such as Starwood establishes both, the DEA has complete discretion to return or retain the aircraft. *See In re Matter of $67,470.00*, 901 F.2d 1540, 1543 (11th Cir. 1990). After Swaim filed the petition, the DEA subpoenaed Gonzalez for an interview. She invoked her Fifth Amendment rights and refused to testify. In light of her refusal, the DEA denied Starwood's Petition for Remission.

2

At that point the only avenue to recover the airplane was a motion for the DEA to reconsider its denial of the Petition for Remission, which Swaim filed. After he did so, the DEA again sought to interview Gonzalez. This time she agreed to be interviewed, provided the interview would be limited to the events and issues surrounding seizure of the aircraft. The DEA insisted that she waive her Fifth Amendment privileges, however, and she refused to be interviewed. Following her refusal, the DEA denied Starwood's motion. Having lost its challenges both in court and in the administrative process, Starwood lost the aircraft.

As it happens, the DEA had seized not only the 1982 Gulfstream aircraft referenced above from Starwood, but six more besides. Chartis retained attorney George Crow to represent Starwood in regard to the other seizures. Crow complied with the notice requirements for filing suit in federal court. In the five cases Crow was handling that had been disposed of at the time summary judgment was sought in this case, three airplanes had been recovered for nominal settlement payments and two were recovered without conditions. Gonzalez was not subpoenaed or asked to submit to an interview with the DEA in any of the proceedings where Crow represented Starwood.

After these events unfolded, Starwood sued Swaim and Rose Walker (collectively, Swaim) for legal malpractice and breach of fiduciary duty in connection with the loss of its 1982 Gulfstream. Swaim filed traditional and no-evidence motions for summary judgment, challenging the causation element of the legal malpractice claim and arguing that the breach of fiduciary duty claim was simply an alternative label for the malpractice claim and thus was precluded by the anti-fracturing rule.

In response to the motions for summary judgment, Starwood presented affidavits from attorneys Crow and Steve Jumes. Crow opined in his affidavit that "the five (5) aircraft were

recovered quickly (between 6 to 10 months) because the [DEA's] case for seizure was weak." He concluded that had Swaim, "faced with the same set of facts," "properly file [sic] the verified claim with the DEA Forfeiture Counsel . . . , then the aircraft would have been returned in the same manner as the five" that had been recovered so far. Thus, Crow opined that Swaim's negligent failure to comply with the notice requirements "caused the forfeiture" of the aircraft. Jumes's affidavit largely tracked Crow's. Jumes came to essentially the same conclusions as did Crow, based on Crow's experience regarding the planes he recovered.

Swaim objected to both affidavits on various grounds, including that they were speculative, hearsay, and "not competent expert witness summary judgment evidence." The trial court ruled that the affidavits would not be considered for summary judgment purposes, granted Swaim's motions for summary judgment, dismissed the breach of fiduciary duty claim, and rendered judgment that Starwood take nothing.

The court of appeals affirmed. ___ S.W.3d ___, ___ (Tex. App.—Dallas 2016). In considering the affidavits, the court cited our opinion in *Elizondo v. Krist* and held that the Crow affidavit was conclusory because Crow made "no case-by-case comparison of the facts in other aircraft seizures cases" with "the facts that are the subject of this case." *Id.* at ___ (citing *Elizondo v. Krist*, 415 S.W.3d 259, 265 (Tex. 2013)). The court concluded that the Crow affidavit "says no more than that Crow, an experienced attorney, has considered the relevant facts and concluded that the aircraft would have been returned had [Swaim] filed a verified claim with the DEA Forfeiture Counsel." *Id.* at ___. The court held that the Jumes affidavit was also conclusory because it, too, was "unsupported by any factual allegations." *Id.* at ___. The court affirmed the dismissal of the

breach of fiduciary duty claim because the claim violated the anti-fracturing rule. *Id.* at ___ ("The anti-fracturing rule 'prevents plaintiffs from converting what are actually professional negligence claims against an attorney into other claims . . . .'" (quoting *Won Pak v. Harris*, 313 S.W.3d 454, 457 (Tex. App.—Dallas 2010, pet. denied))). Starwood challenges only the court of appeals' determination that the Crow affidavit is conclusory.

We review the rendition of summary judgments de novo. *Mid-Century Ins. v. Ademaj*, 243 S.W.3d 618, 621 (Tex. 2007). But we review a trial court's decision to exclude evidence for an abuse of discretion. *Nat'l Liab. & Fire Ins. v. Allen*, 15 S.W.3d 525, 527–28 (Tex. 2000). We necessarily begin our review by considering whether the trial court, in striking the Crow affidavit, abused its discretion by acting "without reference to any guiding rules and principles." *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

To prove a legal malpractice claim, the former client must show (1) the existence of a duty of care owed to the client, (2) that the duty was breached, and (3) that the breach proximately caused damage to the client. *Stanfield v. Neubaum*, 494 S.W.3d 90, 96 (Tex. 2016). It is the former client's burden to prove proximate cause, which includes proof of cause in fact. *See, e.g.*, *Rogers v. Zanetti*, 518 S.W.3d 394, 402 (Tex. 2017). The evidence of cause in fact is tested, in part, by means of the but-for test: would the harm alleged have occurred absent the attorney's alleged breach. *Id.* at 403. In legal malpractice cases, this is a suit-within-a-suit inquiry—the actual result with the alleged misconduct or omission is compared to a hypothetical result the plaintiff claims would have occurred absent the misconduct or omission. *Id.* at 411–12.

5

Generally, in a legal malpractice case, expert witness testimony is required to rebut a defendant's motion for summary judgment challenging the causation element. *See, e.g.*, *id.* at 405. To defeat such a motion, an expert affidavit must be probative and raise a fact issue. *Ryland Grp. v. Hood*, 924 S.W.2d 120, 121–22 (Tex. 1996). Conclusory affidavits are not probative. *Id.* To avoid being conclusory, the affidavit must explain "how and why the negligence caused the injury." *Jelinek v. Casas*, 328 S.W.3d 526, 536 (Tex. 2010). To that end, an expert's opinion must set out a "demonstrable and reasoned basis on which to evaluate [the] opinion." *Elizondo*, 415 S.W.3d at 265.

Swaim argues that Crow's affidavit is conclusory on its face because it does not provide a demonstrable and reasoned basis for his conclusion. The court of appeals agreed, observing that the affidavit made no "case-by-case comparison of the facts in the other aircraft seizure cases [with] the facts that are the subject of this case." ___ S.W.3d at ___. We disagree with that conclusion. Recently, in *Rogers v. Zanetti*—which we decided after the court of appeals issued its opinion—we explained that the relevant question when addressing the adequacy of expert opinion affidavits in legal malpractice cases is "'Why': Why did the expert reach that particular opinion?" *Rogers*, 518 S.W.3d at 405. To demonstrate "why," the affidavit must explain the link between the facts the expert relied upon and the opinion reached. *See id.*; *Elizondo*, 415 S.W.3d at 266.

Crow's affidavit could have set out a more detailed basis for his opinion. But the extent of the detail into which the affidavit delved goes to quality, not adequacy. Crow's ultimate conclusion was that had Swaim complied with the notice provisions required for the federal court proceedings, Starwood's aircraft would have been recovered. So the inquiry becomes *why* did Crow come to that

6

conclusion? *See Rogers*, 518 S.W.3d at 405. The basis for the conclusion was that Crow followed the prescribed methodology six times and had a perfect track record on the five cases disposed of as of the time the trial court granted summary judgment. The facts he relied on are both demonstrable and reasonable. They are demonstrable—as set out in his affidavit, he followed the method he says Swaim should have followed, and in five of the cases the result was recovery of the aircraft. The other case remained pending at the time he executed his affidavit. And his reliance on the high rate of success resulting from his complying with the DEA's procedures to come to that conclusion is reasonable.

Swaim asserts that the sixth plane Crow attempted to recover was ultimately lost to the government. Starwood responds that the loss was because its insurer stopped providing a defense, but in any event the disposition of the sixth case was not part of the summary judgment evidence. And when appellate courts review no-evidence summary judgments, review is of "the evidence presented by the motion and response." *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009) (quoting *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006)).

Swaim argues that the Crow affidavit says nothing more than "Take my word for it, I know," and is thus a conclusory *ipse dixit*. *See Elizondo*, 415 S.W.3d at 264. We disagree. The relevant inquiry regarding the question of whether an affidavit is an *ipse dixit* turns on the inferences, if any, required to bridge the gap between the underlying data and the expert's rationale and conclusion. "[I]f there is 'simply too great an analytical gap between the data and the opinion proffered,'" the testimony fails. *Id.* (quoting *Gammill v. Jack Williams Chevrolet, Inc.*, 927 S.W.2d 713, 726 (Tex. 1998)). Here, the gap is not great. Crow did not simply state that Swaim would have succeeded had

7

he followed the proper procedure. *See Burrow v. Arce*, 997 S.W.2d 229, 236 (Tex. 1999). Rather, based on his experience in following the DEA-prescribed procedures five times with success, as was set out in his affidavit and its attachments, Crow concluded that Swaim would have succeeded had he done likewise.

Swaim also argues that Crow's affidavit is conclusory because it fails to address Gonzalez's failure to testify and reasons why her testimony would not be necessary in this case. That argument likewise fails. The case-within-a-case inquiry requires a comparison between the actual result and a hypothetical result. *Rogers*, 518 S.W.3d at 407–08. The hypothetical result Crow expressed is that the airplane would have been returned without trial and without the necessity of Gonzalez's testimony. Crow's affidavit sets out the fact that Gonzalez's testimony was not requested in the five cases he handled successfully. Thus, it was reasonable for Crow to conclude that her testimony would not have been required in this case.

Swaim also claims that Crow's opinion that the DEA's case was probably weak renders the affidavit conclusory. But Crow's main conclusion is supported by a demonstrable and reasoned basis. Thus, an intermediate conclusion or subjective comment does not render the affidavit conclusory as a whole.

Next, Swaim argues—and the court of appeals implicitly agreed—that our opinions in *Elizondo* and *Burrows* require expert affidavits to provide a factual analysis of the comparators on which the expert relies. Thus, he posits, the Crow affidavit should have addressed differences and similarities between the seizure in this case and the other seizures such as differences in the registered owners, the planes' values, and the jurisdictions of registration. We reject that

8

interpretation. First, "different cases involve different injuries and different causal links." *Rogers*, 518 S.W.3d at 404. Thus, in each suit-within-a-suit inquiry, the comparison is dictated by the context of the alleged misfeasance. *Burrow* and *Elizondo* concerned inadequate settlement amounts obtained by the defendant-attorneys. *Elizondo*, 415 S.W.3d at 259; *Burrow*, 997 S.W.2d at 229. In both cases we concluded that the affidavits were conclusory because they did not explain the factual differences between the injuries of the underlying comparators and the malpractice plaintiff's injuries. In contrast, the Crow affidavit sets up the hypothetical inquiry as between mutually exclusive results: success or failure—either the plane is recovered or it is not. While the seized airplanes were different models, with disparate values, seized in different states, and with different registered owners, differences between the airplane at issue here and the six others are not material because the basis for Crow's conclusion is rooted in procedure, not qualitative facts as to the aircraft. Further, the circumstances surrounding the other six seizures are demonstrated by the documents attached to Crow's affidavit. Swaim claims that attaching the relevant documents generated in the six other cases was not enough; Crow was required to specifically discuss and reference them in order to show that the facts in the other six seizures validate the comparison and Crow's conclusion.

While Swaim's argument has appeal, we think it reaches too far. Crow referenced the attached documents and a chart reflecting the disposition of the seizures in paragraph 13 of his affidavit. And he noted in his affidavit that his comparison to the other six cases was proper because the other seizures arose from "the same set of facts." *See Allbritton v. Gillespie, Rozen, Tanner & Watsky, P.C.*, 180 S.W.3d 889, 893 (Tex. App.—Dallas 2005, pet. denied) (concluding that the trial court abused its discretion by striking an expert affidavit as conclusory when the affidavit provided

9

a reasoned basis and listed the documents the expert reviewed in forming his opinion). In this instance, Crow's references to and attachment of documentation concerning the comparators was sufficient. More importantly, and as discussed above, the reason for Crow's conclusion is not that the particular airplanes and facts surrounding the seizures make the seizures similar, but that they are similar because the airplanes were all seized under the same statute and those he recovered were recovered by following the same procedures.

Next, Swaim argues that Crow's affidavit is conclusory because it does not address certain reasons why Starwood could not have prevailed if the DEA had chosen to aggressively pursue the case in federal court. First, Swaim points to the affidavit's failure to conclusively establish Gonzalez's citizenship. Second, he references a number of other statutory violations that might have applied and been relied on by the DEA at trial and that Starwood might not have been able to overcome. Essentially, Swaim's position would require expert witnesses to set out the factual and legal rationale for every possible exigency for hypothetical comparisons in their causation analyses. But this argument also misses the mark.

"[E]vidence of causation must show that the result in the hypothetical case would, more likely than not, be different than the result in the actually litigated case because of the additional evidence." *Rogers*, 518 S.W.3d at 408. And as discussed above, the case-within-a-case analysis requires a comparison of scenarios: the actual result and the hypothetical result advanced by the plaintiff. Here, the hypothetical result is the airplane's successful recovery because the DEA would not have pursued the matter in federal court. The basis for that hypothetical result is the DEA's decision not to do so in the five other seizures Crow handled. Under this hypothetical result,

10

Gonzalez's citizenship and the likelihood of overcoming trial burdens and other allegations are irrelevant because the claim is that the case would not have gone to trial. The DEA did not meet the burden to prove that the seizures were proper in any of the comparators. Thus, analysis regarding ultimate victory on the merits is unnecessary because, as the affidavit sets out, "more likely than not," those issues would have never come up.

It is unnecessary for an expert in a case such as this to provide a legal analysis of every possible exigency, no matter how remote. Indeed, in *Ford Motor Co. v. Ledesma*, we held that a party's complaints that an opposing expert's testimony did not consider all the relevant facts "go to its weight, not its admissibility." 242 S.W.3d 32, 40–41 (Tex. 2007). Had the summary judgment evidence shown that Crow was successful in recovering some of the airplanes but not others, then a more detailed analysis of the merits might have been necessary. But this affidavit, on these facts, only asserts that had Swaim challenged the seizure by complying with the notice requirements, the DEA likely would have yielded as it did in the other cases.

Because the affidavit is not conclusory, we grant the petition for review. Without hearing oral argument, we reverse the court of appeals' judgment and remand the case to the court of appeals for it to consider the issues that it did not reach. *See* TEX. R. APP. P. 59.1.

**OPINION DELIVERED:** September 29, 2017