

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

## 06-20-00005-CV

_____

### WHITE ROCK EXPLORATION, INC., AND
### RICHARD L. CLAY, INDIVIDUALLY, Appellants

### V.

### FREEMAN MILLS, P.C., JASON R. MILLS, INDIVIDUALLY,
### VANCE P. FREEMAN, INDIVIDUALLY,
### AND GRAHAM K. SIMMS, INDIVIDUALLY, Appellees

On Appeal from the 241st District Court
Smith County, Texas
Trial Court No. 17-2914-C

Before Morriss, C.J., Burgess and Stevens, JJ.
Opinion by Justice Stevens

# OPINION

White Rock Exploration, Inc., and Richard L. Clay[1] sued Freeman Mills, P.C., Jason R. Mills, Vance P. Freeman, and Graham K. Simms[2] for legal malpractice, alleging claims of negligence and negligent misrepresentation. The trial court granted Freeman Mills' no-evidence motion for summary judgment.

On appeal, White Rock contends that the no-evidence motion was not sufficiently specific and that the trial court erred by granting the motion and entering judgment against it on all claims. We find that (1) the no-evidence motion for summary judgment was sufficiently specific and (2) the trial court did not err in granting summary judgment. As a result, we affirm the trial court's no-evidence summary judgment.

## I.      Background

### A.      Factual Background

White Rock Exploration, Inc., is an oil and gas operating company run by its president and majority shareholder, Clay. In December 2013 and January 2014, White Rock contracted with Palestine Water Well Service, Inc. (Palestine), to drill an exploratory well in Limestone County. Jere Alan Pritchett, Palestine's president, served as tool pusher and driller on the project. White Rock determined that Palestine did not have the equipment, personnel, or expertise to drill the well in a workman-like manner and that Pritchett had misrepresented Palestine's capabilities when

---

[1]Unless otherwise expressly stated, we refer to White Rock Exploration, Inc., and Richard L. Clay collectively as "White Rock."

[2]Unless otherwise expressly stated, we refer to the appellees collectively as "Freeman Mills."

seeking the contract to drill the well. On January 6, 2014, when Clay was visiting with Pritchett about the project, Pritchett allegedly assaulted Clay in Pritchett's travel trailer at the well site and then falsely informed the Limestone County Sheriff that Clay had attacked Pritchett with a knife. While awaiting the arrival of the sheriff's deputies, Pritchett allegedly staged a scene in his travel trailer to support the false accusation. Clay was later arrested and charged with aggravated assault with a deadly weapon.

Clay claimed that, on his own behalf and on behalf of White Rock, he consulted with Freeman Mills regarding possible legal action against Palestine and Pritchett and that Freeman Mills erroneously informed him that the statute of limitations for malicious prosecution and slander against Pritchett was two years. Freeman Mills allegedly advised Clay to first sue Palestine and to delay in filing suit on his individual claims against Pritchett. Clay, in alleged reliance on that advice, instructed Freeman Mills to first pursue White Rock's claims against Palestine, to seek an early settlement, and to postpone pursuing his individual claims until the claims against Palestine were resolved.

Freeman Mills thereafter filed suit on behalf of White Rock against Palestine in the 241st Judicial District Court of Smith County.[3] In April 2015, White Rock and Palestine mediated their dispute, but failed to settle the case. Following the mediation, Freeman Mills presented White Rock with a fee invoice in the amount of $51,158.25. Clay stated that Freeman Mills advised him, in October 2015, to settle White Rock's claims against Palestine through a mutual release with no

---

[3]Originally appealed to the Twelfth Court of Appeals in Tyler, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001. We are unaware of any conflict between precedent of the Twelfth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

3

payment by either party. Clay settled the lawsuit against Palestine in alleged reliance on Freeman Mills's representation that the statute of limitations on Clay's malicious prosecution and slander claims was two years. Meanwhile, the criminal matter against Clay was "no billed" by the Limestone County Grand Jury, and Pritchett was indicted for tampering with or fabricating physical evidence. On December 30, 2015, Clay discovered that the statute of limitations for malicious prosecution and slander was one year and had passed.

### B.     Procedural Background and Summary Judgment Evidence

In December 2017, White Rock and Clay sued Freeman Mills, alleging, among other things, that Freeman Mills (1) permitted the statute of limitations to run on Clay's claims of malicious prosecution and slander; (2) made only a cursory effort to seek a settlement with Palestine nine months after the lawsuit was filed, despite Clay's repeated direction to seek an early settlement; (3) presented White Rock with an invoice for legal services totaling $51,158.25 twelve days following the April 2015 mediation between White Rock and Palestine, thereby negatively impacting White Rock's ability to evaluate settlement options; and (4) advised White Rock to settle its claims against Palestine for a mutual release and then proceed with the claims against Pritchett, thereby causing White Rock to settle when it otherwise would not have done so. White Rock's suit against Freeman Mills also alleged that these actions amounted to negligence and negligent misrepresentation and that it was entitled to attorney fees and exemplary damages.

On January 4, 2019, Freeman Mills filed its no-evidence motion for summary judgment. The summary judgment motion stated that, although White Rock appeared to claim "that Defendants negligently advised it to settle and that, but for this negligent advice, White Rock

4

would have won at trial," it had no evidence that the "advice was negligent, that White Rock would have won at trial, or what White Rock's recovery would have been." Freeman Mills also claimed that it never represented Clay, and while Clay appeared to claim that, "but for negligent misrepresentations made by [Freeman Mills], he would have timely filed a lawsuit," he had no evidence "that he would have won that lawsuit or of what his recovery would have been." The motion alleged that White Rock and Clay had the "burden of proving that, 'but for' the attorney's breach of duty, the plaintiff would have prevailed on the underlying cause of action and would have been entitled to judgment." The motion asserted that Clay had no evidence on each element of his negligence claim and that White Rock had no evidence of causation or damages for its claim. Finally, the motion alleged that there was no evidence of gross negligence. The trial court set the no-evidence motion for summary judgment for a hearing on March 7, 2019.

On January 22, 2019, White Rock filed its response to the no-evidence motion for summary judgment, which discussed the underlying case and alleged, among other things, that Freeman Mills failed to inform Clay that it would not pursue his individual claims. The response also alleged that, based on Pritchett's false accusation against Clay, Clay was arrested and charged with assault.

On February 14, 2019, White Rock filed an amended response in opposition to the no-evidence motion for summary judgment. This response alleged that, on June 18, 2014, the "Grand Jury no-billed Clay and . . . indicted Pritchett for . . . tampering with or fabricating physical evidence." On February 28, 2019, White Rock filed its second amended response in opposition to summary judgment, and on November 5, 2019, White Rock filed its third amended response.

5

Exhibits to White Rock's responses to the summary judgment motion included Clay's affidavit and unsworn declaration,[4] in which he testified that Freeman Mills advised him on his personal claims against Pritchett and billed for a meeting with him on June 17, 2014, in which they discussed strategy for adding his personal claims against Pritchett. Freeman Mills never presented Clay with a letter of non-representation and further advised Clay on two separate occasions that the statute of limitations for malicious prosecution and defamation was two years. The most recent of those representations happened on October 19, 2015, at a meeting in which Freeman Mills advised Clay to settle the Palestine lawsuit for a mutual release with no payment by either party. Freeman Mills represented to Clay that the statute of limitations for malicious prosecution and slander was two years and reassured Clay that he could still file suit against Pritchett because the statute on these claims had not yet run. Clay relied on that advice and instructed Freeman Mills to make sure that the wording of the settlement agreement did not release his malicious prosecution or defamation claims. Freeman Mills told Clay that it would file suit on his behalf when he was ready. Clay discussed the ongoing criminal charges against him with Freeman Mills and only did so based on his attorney-client relationship with Freeman Mills.

When, on December 30, 2015, Clay discovered that the statute of limitations on his personal claims was actually one year, he emailed Freeman Mills stating that he was going to file

---

[4]The unsworn declaration was an exhibit to White Rock's third amended response to the no-evidence summary judgment motion and complies with Section 132.001 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 132.001 (stating that, subject to certain exceptions, unsworn declaration may be used in lieu of affidavit).

suit before the two-year limitation period they had discussed was up.[5]  At the time of the settlement,

Clay believed that he could still seek recovery through other causes of action, when in reality,

---

[5]Clay's affidavit and unsworn declaration are long and include these statements:

- Clay stated that Freeman Mills did not inform him that, in order to recover exemplary damages for slander, he would be required to request a correction, clarification, or retraction of the defamatory statements within ninety days after learning of their publication.

- White Rock had an oral contract with Palestine, that Palestine breached the contract by failing to drill the Gates #1 well in a good and workmanlike manner—describing evidence in support of that contention—and in support of his contention that Palestine committed fraud and violations of the Texas Deceptive Trade Practices Act.  Clay concluded that White Rock suffered damages in excess of $100,000.00.

- An attorney-client relationship existed between Freeman Mills and White Rock.

- Pritchett made statements that White Rock's president committed a crime of moral turpitude and that it refused to pay Palestine, resulting in financial harm to White Rock.

- Freeman Mills advised White Rock that it would be important to file suit against Palestine first.  In March 2014, White Rock directed Freeman Mills to file suit but to immediately seek to start settlement discussions.  Those discussions did not begin until nine months later.  At that time, opposing counsel was not aware that Pritchett had been charged with filing a false report.  In December 2014, Freeman Mills advised opposing counsel of Pritchett's indictment, and did not follow up with settlement discussions for another two months.  That consisted of an exchange of emails for which White Rock was billed for eighteen minutes.  Freeman Mills spent a total of forty-eight minutes seeking to initiate settlement talks in the first year of litigation.

- Twelve days after mediation on April 9, 2015, White Rock received an invoice from Freeman Mills in the amount of $51,158.25.  This lack of information at the mediation negatively impacted White Rock's ability to evaluate settlement options.

- But for Freeman Mills's error regarding the statute of limitations, White Rock would not have agreed to the settlement.

- White Rock was forever denied the opportunity to seek damages from Pritchett or PWWS for business defamation or business disparagement.

- If Freeman Mills had pursued early settlement as directed, settlement would have been reached earlier and at a substantially lower cost.

- If Freeman Mills would not have given White Rock erroneous advice when the lawsuit was settled, White Rock would have continued to trial and would have had the opportunity to obtain a judgment against Palestine.

7

those claims were already barred. In an email dated January 4[, 2016], Gus Clardy, an attorney with Freeman Mills, stated, "[I]t looks like [Clay's] claims for malicious prosecution and slander are both out." (Second alteration in original).

As to the underlying claims against Pritchett, Clay testified that Pritchett assaulted him on January 6, 2014, in Pritchett's trailer at the well site. According to Clay, Pritchett then staged a scene in the trailer to support his accusation to law enforcement officers that Clay attacked him with a knife. As a result, Clay was arrested and charged with aggravated assault with a deadly weapon. On June 18, 2014, the grand jury no-billed the charges against Clay, and Pritchett was subsequently indicted for tampering with or fabricating physical evidence. Clay stated that he expended more than $25,000.00 in legal fees and for a bail bond as part of the aggravated assault charge and paid more than $2,000.00 in medical expenses for treatment of physical injuries sustained in the altercation. He testified that he suffered from depression, anxiety attacks, sleep deprivation, severe mood swings, and cold sweats as a result of the false accusations of criminal misconduct. Consequently, he was treated by a psychiatrist and was prescribed antidepressants.

Clay testified that Pritchett published the false statements of assault in his incident report to the Limestone County Sheriff's Department and published them to other people and businesses in the oil industry. These false accusations caused Clay distress, and certain non-operators in the drilling of the well refused to pay White Rock, citing Pritchett's accusations.

White Rock produced other evidence in response to the summary judgment motion in the form of the affidavit of Todd Lessert, the attorney who represented Clay after his arrest for aggravated assault with a deadly weapon following the altercation with Pritchett. Lessert testified

8

that the criminal charges stemmed from Pritchett's false report to the Limestone County Sheriff's Office and his fabrication of physical evidence in the form of a blood-smeared knife.

Lessert also testified that the evidence indicated that Pritchett attacked Clay, leading to a brief altercation in which no weapons were involved. Pritchett contacted the sheriff's office and reported that Clay attacked him with a knife and staged a scene to support his allegations, including the placement of a knife with blood on the blade on the floor beneath the dining table. Clay was arrested and charged with aggravated assault with a deadly weapon. Pritchett was on record describing the incident five times, and each story varied dramatically.

The investigation also revealed that Clay was excluded from contributing any DNA to the knife while Pritchett's DNA was on the knife blade and handle. The knife was a National Wild Turkey Federation knife, and Pritchett was a member of that organization. On June 18, 2014, a Limestone County grand jury returned a no-bill of Clay and indicted Pritchett under cause number 13354-A for tampering with/fabricating physical evidence with intent to impair. On February 16, 2016, the 77th Judicial District Court of Limestone County entered an order of expunction in Clay's favor. Lessert stated that Clay was extremely distressed over the possibility of being convicted of the criminal charges.

Because Clay told him that Freeman Mills was representing him personally in a possible civil action against Pritchett and Palestine, Lessert agreed to meet with Freeman Mills. At the meeting in Freeman Mills's office, Lessert spoke with Mills and Simms, along with Clay, about the defense of the criminal case. Lessert testified that, at the meeting, he was told that Freeman Mills would file suit against Pritchett and Palestine for Clay's personal claims once White Rock's

9

suit was concluded. Lessert testified that it was clear to him that Mills and Simms were acting as Clay's attorneys as they provided him legal advice. The content of the discussion about Clay's claims indicated to Lessert that Mills and Simms had previously discussed these claims with Clay. Lessert would not have agreed to communicate with Freeman Mills about the ongoing criminal matter and would have instructed Clay not to speak with Freeman Mills further about the matter but for this attorney-client relationship.

Other evidence attached to White Rock's summary judgment responses included:

- An email from Simms to Mills stating that the petition should be amended to add Pritchett as "piercing the corporate veil" and that Pritchett should not be added based on any other cause of action because they "should have been aware of those causes of action before 2/14/15, which was the joinder deadline."

- A Freeman Mills billing statement that indicated that Mills had engaged in email discussions with the client "regarding counsel for defamation claim and procedure for agreeing to transfer case to Limestone or Anderson County." A separate June 17, 2014, entry indicated that Mills had a conference with Clay "about the criminal case and strategy for adding his personal claims against Jere Pritchett."

- An indictment bearing the June 18, 2014, file mark of the Limestone County District Clerk in cause number 13354-A stating that, on January 6, 2014, Pritchett, knowing that an offense had been committed, intentionally or knowingly destroyed or concealed a knife—an item of evidence—with the intent to impair its availability as evidence in any subsequent investigation or official proceeding related to the offense.

- The affidavit of Darren J. Pratka, a petroleum landman who performed work on behalf of White Rock. Pratka, who was present at meetings with Clay and Freeman Mills, testified that Freeman Mills advised Clay of claims against Palestine and Pritchett, including defamation and making false felony accusations against Clay. Freeman Mills advised Clay to pursue the White Rock claims first and to later pursue his personal claims against Pritchett, on which they advised Clay. Freeman Mills expressed no concern that delaying action on Clay's personal claims would jeopardize those claims.

10

- The affidavit of Shelly R. Dean, an employee of White Rock, who recounted her conversation with Chad Thornton of Kenner Well Service in March 2014 in which Thornton told Dean that "the word on the street was" that White Rock did not pay its drilling contractor and which recounted the story of the altercation between Clay and Pritchett, including a claim that Clay tried to slash Pritchett's throat with a knife. Dean also stated that Clay believed Freeman Mills was representing him on his personal claims and that he was humiliated by the criminal allegations and experienced extreme stress as a result.

- An October 24, 2014, email from Clay to Simms advising Simms that Pritchett had been indicted on tampering with physical evidence and inquiring how that would "play into all this."

- A December 30, 2015, email from Clay to Mills and Simms stating that he had read Section 16.002 of the Civil Practice and Remedies Code and asking that they "confirm or correct" his understanding that "the primary personal claims that [he] may have had against Jere Pritchett (malicious prosecution and slander) have a one-year limitation period." Clay explained that he "was about to take action to file suit before the two-year limitation period [they had] discussed was up" and asked for a response as soon as possible.

- A January 5, 2016, email from Mills to Clay forwarding an email from another Freeman Mills lawyer concluding that the statute of limitations for malicious prosecution had run.

- Excerpts from Pritchett's February 13, 2015, deposition in which Pritchett testified that Clay attacked him with a knife, but the knife fell out of Clay's hand. Pritchett did not seek medical attention. He asked law enforcement to arrest Clay.

- The expert affidavit of attorney Michael D. West.

On December 5, 2019, the trial court granted Freeman Mills's no-evidence motion for summary judgment based on "the motion, the response[s], all relevant filings, the arguments of counsel, the admissible evidence, and the relevant authorities."

11

## II. Standard of Review

We review the trial court's decision to grant summary judgment de novo. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). A party without the burden of proof may, after adequate time for discovery, move for summary judgment on the basis that there is no evidence of one or more essential elements of a claim or defense. TEX. R. CIV. P. 166a(i); *MJS & Assocs., LLC v. Master*, 501 S.W.3d 751, 756 (Tex. App.—Tyler 2016, pet. denied). "No-evidence summary judgments are reviewed under the same legal sufficiency standard as directed verdicts." *Merriman*, 407 S.W.3d at 248 (citing *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750 (Tex. 2003)).

"Under this standard, evidence is considered in the light most favorable to the nonmovant, crediting evidence a reasonable jury could credit and disregarding contrary evidence and inferences unless a reasonable jury could not." *Id.* (citing *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 756 (Tex. 2007)). "Once a no evidence motion has been filed in accordance with Rule 166a(i), the burden shifts to the nonmovant to bring forth evidence that raises a fact issue on the challenged element[s]." *MJS*, 501 S.W.3d at 756 (citing *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006)).

"A no evidence motion is properly granted if the nonmovant fails to bring forth more than a scintilla of probative evidence to raise a genuine issue of material fact as to an essential element of the nonmovant's claim on which the nonmovant would have the burden of proof at trial." *Neurodiagnostic Tex. L.L.C., v. Peirce*, 506 S.W.3d 153, 162 (Tex. App.—Tyler 2016, no pet.) (citing *King Ranch, Inc.*, 118 S.W.3d at 751). "If the evidence supporting a finding rises to a level

12

that would enable reasonable, fair minded persons to differ in their conclusions, then more than a scintilla of evidence exists." *Id*. "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)).

## III. Analysis

### A. The No-Evidence Motion for Summary Judgment Was Sufficiently Specific

White Rock initially complains that the summary judgment motion failed to meet Rule 166a(i)'s specificity requirement and was therefore insufficient to support summary judgment as a matter of law.

A no-evidence motion for summary judgment "must be specific in challenging the evidentiary support for an element of a claim or defense; conclusory motions or general no evidence challenges to an opponent's case are not authorized." *Neurodiagnostic Tex. L.L.C.*, 506 S.W.3d at 175 (citing *Holloway v. Tex. Elec. Util. Const., Ltd.*, 282 S.W.3d 207, 213 (Tex. App.—Tyler 2009, no pet.)); *see* TEX. R. CIV. P. 166a, cmt. The Rule provides,

> After adequate time for discovery, a party without presenting summary judgment evidence may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. The motion must state the elements as to which there is no evidence. The court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact.

TEX. R. CIV. P. 166a(i). "The underlying purpose of this requirement 'is to provide the opposing party with adequate information for opposing the motion, and to define the issues for the purpose of summary judgment.'" *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 311 (Tex. 2009) (quoting

13

*Westchester Fire Ins. Co. v. Alvarez*, 576 S.W.2d 771, 772 (Tex. 1978)). This is analogous to the

"fair notice" pleading requirements in Rules 45 and 47 of the Texas Rules of Civil Procedure.[6] *Id.*

Freeman Mills's motion for no-evidence summary judgment included six paragraphs

attacking the lack of evidence for the elements of the claims asserted by White Rock and by Clay.[7]

---

[6]Rule 45(b) states that "an allegation . . . shall not be grounds for an objection when fair notice to the opponent is given by the allegations as a whole." TEX. R. CIV. P. 45(b). Rule 47(a) requires that "[a]n original pleading which sets forth a claim for relief . . . shall contain . . . a short statement of the cause of action sufficient to give fair notice of the claim involved." TEX. R. CIV. P. 47(a).

[7]Paragraph A alleged that White Rock had no evidence on three elements of its negligence claim. Freeman Mills specifically alleged,

> A legal-malpractice action requires proof of four elements: (1) the attorney owed the plaintiff a duty; (2) the attorney breached that duty; (3) the breach proximately caused the plaintiff's injuries; and (4) damages occurred. If the malpractice action arises from prior litigation, the plaintiff bears the additional burden of proving that, "but for" the attorney's breach of duty, the plaintiff would have prevailed on the underlying cause of action and would have been entitled to judgment. To discharge this burden, known as the "suit within a suit" requirement, the plaintiff must produce evidence explaining the legal significance of the attorney's failure and the impact this had on the underlying actions. In other words, White Rock must put forth evidence on each element of the claims it alleges that it would have won. White Rock has no evidence on any of those claims.

> White Rock has no evidence that Defendants breached any duty that they allegedly owed to it. White Rock has no evidence of causation. White Rock has no evidence on each element of its claims from the previous lawsuit. And White Rock has no evidence of damages.

(Footnotes omitted).

Paragraph B alleged that Clay had no evidence on each element of his negligence claim. Freeman Mills specifically alleged, "A legal-malpractice action require[s] either proof of four elements: (1) the attorney owed the plaintiff a duty; (2) the attorney breached that duty; (3) the breach proximately caused the plaintiff's injuries; and (4) damages occurred. Clay has no evidence on each of these elements." (Footnote omitted).

Paragraph C alleged that White Rock had no evidence of causation or damages for its negligent misrepresentation claim. Freeman Mills specifically alleged,

> "Negligent misrepresentation requires that: (1) the speaker make a representation in the course of its business or in a transaction in which it had a pecuniary interest; (2) the representation was false and offered as business guidance; (3) the speaker did not exercise reasonable care or competence in obtaining or communicating the information; and (4) another party suffers pecuniary loss by justifiably relying on the representation." Further, "to prevail on a claim for negligent misrepresentation," the plaintiff must prove that the defendant's "misrepresentation was a proximate cause of their damages."

14

The motion stated the elements of each claim and then stated the specific elements being challenged. Based on its thorough responses to the challenged elements, it is apparent that White Rock understood Freeman Mills's motion.

White Rock relies on *Bever Properties, L.L.C. v. Jerry Huffman Custom Builder, L.L.C.*, 355 S.W.3d 878 (Tex. App.—Dallas 2011, no pet.), in support of its position that the summary

> White Rock has no evidence that any alleged misrepresentation caused it to suffer a pecuniary loss, nor does it have any evidence of the amount of the pecuniary loss. Moreover, it has no evidence that it would have won its claims in the previous lawsuit.

(Footnotes omitted).

Paragraph D alleged that Clay had no evidence of causation or damages for his negligent misrepresentation claim. Freeman Mills specifically alleged the elements of negligent representation and no proof that the defendant's misrepresentation proximately caused the plaintiff's damages. Freeman Mills concluded,

> Clay has no evidence that any alleged misrepresentation caused him to suffer a pecuniary loss, nor does he have any evidence of the amount of the pecuniary loss. Moreover, because Clay's negligent misrepresentation claim concerns a missed statute of limitations, Clay must prove that he would have won the underlying claims. He has no evidence that he would have won had he filed his lawsuit.

(Footnote omitted).

Paragraph E alleged that Plaintiffs had no evidence of gross negligence. Freeman Mills specifically alleged,

> Exemplary damages can be awarded if the plaintiff shows that its injury was the result of fraud, gross negligence, malice, or certain statutory violations." Here, Plaintiffs have alleged gross negligence.

> "Gross negligence" means an act or omission: (A) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (B) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others." And "extreme degree of risk" means not a remote possibility of injury or even a high probability of minor harm, but rather the likelihood of a substantial injury to the plaintiff. A substantial injury or harm is a harm such as death, grievous physical injury, or financial ruin.

> Plaintiffs have no evidence for each element of gross negligence.

(Footnotes omitted).

15

judgment motion was not sufficiently specific. But in that case, the appellees' no-evidence motion did not expressly identify the specific elements of appellants' claims that lacked supporting evidence. *Id*. at 888. That is not the case here.

We conclude that the motion was sufficient to comply with Rule 166a(i) and to provide White Rock with adequate information to oppose the motion and to "define the issues for the purpose of summary judgment." *Timpte Indus., Inc.*, 286 S.W.3d at 311.

**B.** **Because White Rock Failed to Present Expert Testimony on the Element of Causation, Summary Judgment Was Proper**

**1.** **Expert Testimony Was Required to Prove Causation**

A legal malpractice claim is based on negligence. *Cosgrove v. Grimes*, 774 S.W.2d 662, 664 (Tex. 1989). For that reason, "the former client must show (1) the existence of a duty of care owed to the client, (2) that the duty was breached, and (3) that the breach proximately caused damage to the client." *Starwood Mgmt., LLC by and through Gonzalez v. Swaim*, 530 S.W.3d 673, 678 (Tex. 2017) (per curiam) (citing *Stanfield v. Neubaum*, 494 S.W.3d 90, 96 (Tex. 2016)).

White Rock alleged that Freeman Mills owed a duty to White Rock to "provide counsel . . . within the applicable standard of care in handling the lawsuit between White Rock and [Palestine]" and that Freeman Mills breached its duty (1) in failing to pursue settlement discussions with Palestine as directed by White Rock, (2) in failing to provide pre-suit notice to Palestine for White Rock's breach of contract and Texas Deceptive Trade Practices Act claims, and (3) in failing to timely provide White Rock with accurate invoices for legal services. White Rock also alleged that each of these negligent acts proximately caused its damages and that Freeman Mills's error regarding the statute of limitations for malicious prosecution and slander constituted negligence

16

and negligence per se.  The negligent misrepresentation claim essentially alleged that Freeman Mills's reckless representation that the statute of limitations for malicious prosecution and slander was two years—which White Rock justifiably relied on—prevented White Rock from timely filing and recovering on those claims.

"It is the former client's burden to prove proximate cause, which includes cause in fact." *Swaim*, 530 S.W.3d at 678 (citing *Rogers v. Zanetti*, 518 S.W.3d 394, 402 (Tex. 2017)).  "[P]roof of causation requires evidence of all of the elements of the underlying claim" when the legal-malpractice plaintiff was the plaintiff in the underlying case.  *Kelley & Witherspoon, LLP v. Hooper*, 401 S.W.3d 841, 847 (Tex. App.—Dallas 2013, no pet.).  "Generally, in a legal malpractice case, expert witness testimony is required to rebut a defendant's motion for summary judgment challenging the causation element."  *Swaim*, 530 S.W.3d at 679; *see Rogers v. Zanetti*, 518 S.W.3d 394, 405 (Tex. 2017) (allegations involving valuation of underlying claim require need for expert rebuttal testimony); *Alexander v. Turtur & Assocs., Inc.*, 146 S.W.3d 113, 119 (Tex. 2004) ("Proof of causation of injury often requires expert testimony concerning what the attorney should have done under the circumstances" or to explain the causal link.) (quoting 5 Mallen & Smith § 33.17 at 138–39)).  "Causation must be proved, and conjecture, guess, or speculation will not suffice as that proof."  *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 122 (Tex. 2009).  To defeat the summary judgment motion, the "expert affidavit must be probative and raise a fact issue."  *Swaim*, 530 S.W.3d at 679.  Generally, a plaintiff who fails to produce expert testimony regarding causation will not be successful in discharging this burden.  *Alexander*, 146 S.W.3d at 119–20.

17

"Whether a negligent lawyer's conduct is the cause in fact of the client's claimed injury requires an examination of the hypothetical alternative: What should have happened if the lawyer had not been negligent?" *Rogers*, 518 S.W.3d at 404. As the court explained in *Rogers*, malpractice claims can "involve imprudent attorney actions that materially and unfavorably affect the value of the client's underlying claim or defense" and, therefore, "do not always depend on ultimate victories." *Id*. Consequently, "the measure of damages [is] 'the difference between the result obtained for the client and the result that would have been obtained with competent counsel.'" *Id*. (citing *Elizondo v. Krist*, 415 S.W.3d 259, 263 (Tex. 2013)). Here, the issue of whether White Rock would have obtained a different result via settlement or what the outcome of the unasserted claims might have been is "beyond the ken of most jurors." *Id*. White Rock does not dispute the necessity of producing expert testimony on causation.

2. **Because West's Affidavit Was Conclusory, It Was no Evidence of Causation**

"In order to be competent summary-judgment evidence, an expert's opinion must have a 'demonstrable and reasoned basis on which to evaluate his opinion.'" *Rogers*, 518 S.W.3d at 405 (quoting *Elizondo*, 415 S.W.3d at 265). "This basis must come in the form of an answer to the question 'Why': Why did the expert reach that particular opinion?" *Id*. (citing *Burrow v. Arce*, 997 S.W.2d 229, 236 (Tex. 1999)). Therefore, an affidavit that does not provide the underlying facts to support its conclusion is conclusory. *In re Cauley*, 437 S.W.3d 650, 656 (Tex. App.—Tyler 2014, orig. proceeding). Further, "conclusory statements made by an expert witness are insufficient to support summary judgment." *Burrow v. Arce*, 997 S.W.2d 229, 235 (Tex. 1999) (quoting *Anderson v. Snider*, 808 S.W.2d 54, 55 (Tex. 1991) (per curiam)). This is so because

18

conclusory affidavits "are not credible, nor susceptible to being readily controverted." *Ryland Grp., Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996) (per curiam); *see Valerus Compression Servs. v. Gregg Cty. Appraisal Dist.*, 457 S.W.3d 520, 530 (Tex. App.—Tyler 2015, no pet.).[8] With these precepts in mind, we must determine whether White Rock's response included competent evidence sufficient to raise a genuine fact issue on the element of causation, i.e., what would have happened in the *Palestine* lawsuit and on the unasserted malicious prosecution and slander claims with competent counsel?

Because the competency of West's testimony[9] is central to this appeal, we reproduce the substantive paragraphs of his affidavit below:

3.     In the above-styled case, I have reviewed Plaintiffs' Original Petition; Defendants' Answer; Defendants' . . . No-Evidence Motion for Summary Judgment; and Plaintiffs' Amended Response to Defendants' No-Evidence Motion for Summary Judgment, including the exhibits thereto.

4.     My opinions in this affidavit are based on 27 years of legal experience, experience with claims and lawsuits involving attorneys and legal malpractice, my education, and training.

5.     It is my opinion that Defendants Freeman Mills, P.C., Jason R. Mills, Vance P. Freeman, and Graham K. Simms (hereinafter collectively "Defendants") did have an attorney-client relationship with both White Rock Explorations, Inc. and Richard Clay (hereinafter collectively "Plaintiffs").

6.     As their attorneys, Defendants owed a duty to Plaintiffs. That duty includes a fiduciary duty and the duty to act as a reasonably prudent lawyer would under the same or similar circumstances.

---

[8]Defects in the substance of a summary judgment affidavit may be addressed for the first time on appeal. *Am. Idol Gen., LP v. Pither Plumbing Co.*, No. 12-14-00134-CV, 2015 WL 1951579, at *2 (Tex. App.—Tyler, Apr. 30, 2015, no pet.) (mem. op.). An affidavit that is conclusory is substantively defective. *In re E. Tex. Oilfield Prod. Servs., Inc.*, No. 12-20-00077-CV, 2020 WL 1697428, at *3 (Tex. App.—Tyler Apr. 8, 2020, orig. proceeding) (mem. op.).

[9]West, an attorney licensed with the Texas Supreme Court since 1992, testified that he practices general civil litigation and has primarily represented parties in commercial and civil litigation matters, including legal malpractice cases.

19

7. Defendants breached the duties which they owed to Plaintiffs by, among other things, those listed in Plaintiffs' Amended Response to Defendants No-Evidence Motion for Summary Judgment, failing to properly pursue the Plaintiffs' claims against Palestine Water Well Services, Inc. and Jere Pritchett, failing to preserve the statute of limitations on Richard Clay's claims against Jere Pritchett, and by inaccurately informing Plaintiffs of the proper statute of limitations on Plaintiffs' claims.

8. Defendants' negligence proximately caused ("but for") Plaintiffs' damages that they suffered and complain of.

9. Defendants were grossly negligent in their legal representation of Plaintiffs. Defendants' actions and inactions involved an extreme degree of risk and conscious indifference to the rights of Plaintiffs.

10. Defendants also made negligent misrepresentations in their legal representation of Plaintiffs. Defendants' representations were false and offered as business guidance to Plaintiffs. Defendants did not exercise reasonable care or competence in communication [sic] the information to Plaintiffs. Plaintiffs, especially Richard Clay, justifiably relied on Defendants' misrepresentations. Plaintiffs suffered pecuniary loss by justifiably relying on Defendants' misrepresentations. Defendants' misrepresentations were the proximate cause of Plaintiffs' damages.

West's testimony includes three statements regarding causation: (1) "Defendant's negligence proximately caused ("but for") Plaintiffs' damages that they suffered and complain of," (2) "Plaintiffs suffered pecuniary loss by justifiably relying on Defendants' misrepresentations," and, (3) "Defendants' misrepresentations were the proximate cause of Plaintiffs' damages."

Freeman Mills contends that these statements are conclusory because they do not explain the basis of West's opinion that Freeman Mills's actions proximately caused damage to White Rock or Clay. But White Rock points to West's statement that his opinions were made after reviewing White Rock's original petition, Freeman Mills's answer, Freeman Mills's motion for summary judgment, and each of White Rock's responses to the summary judgment motion,

20

including all attached exhibits. White Rock points out that these exhibits—as detailed above—include pertinent factual information on each of the elements of the underlying claims and concludes that, when this information is accounted for, West's affidavit is not conclusory. We disagree.

The Texas Supreme Court disapproved of this reasoning in *Burrow*, a legal malpractice case stemming from the representation of plaintiffs in a class-action lawsuit that ended in settlement. *Burrow*, 997 S.W.2d at 235–36. The defendants' expert submitted an affidavit which stated that he had reviewed all the relevant facts and concluded that the settlements were fair and reasonable. *Id.* Although the court recognized that the attorney's training and experience qualified him to offer opinions on the fairness of the settlements, he was not permitted to simply say, "Take my word for it, I know: the settlements were fair and reasonable." *Id.* at 236. Instead, the opinions required a reasoned basis. The affidavit, said the court, was "nothing more than a sworn denial of plaintiff's claims." *Id.* at 235.

Likewise, West's affidavit does not explain why, in the absence of negligence, a better settlement would have been achieved in the underlying lawsuit, why White Rock would have prevailed in the underlying lawsuit, or what the outcome of Clay's personal claims would have been in the absence of negligence. West's affidavit does not answer the question of what should have happened in the *Palestine* lawsuit and on the unasserted malicious prosecution and slander claims in the absence of negligence. *See Rogers*, 518 S.W.3d at 404. Thus, these statements are conclusory. *Id.* at 405; *Jelinek v. Casas*, 328 S.W.3d 526, 536 (Tex. 2010) ("It is not enough for an expert simply to opine that the defendant's [wrongful act] caused the plaintiff's injury.").

21

Because these statements are conclusory, they are no evidence of causation. *See Burrow*, 997 S.W.2d at 235; *Valerus Compression Servs.*, 457 S.W.3d at 530.

In the absence of expert testimony on the causation element of White Rock's negligence and negligent misrepresentation claims, summary judgment was proper.[10]

## IV.    Conclusion

We affirm the trial court's no-evidence summary judgment.


Scott E. Stevens
Justice

Date Submitted:        July 3, 2020
Date Decided:          August 5, 2020

---

[10]Because we conclude that White Rock's summary judgment response did not provide expert testimony on the element of causation on its negligence and negligent misrepresentation claims, we need not address the issues of whether the summary judgment response raised a fact issue on the elements of duty and breach of duty. Likewise, we need not address Freeman Mills's claim that White Rock's brief did not adequately address the issue of whether hypothetical damages flowing from the "case within a case" were collectible. This is part and parcel of the causation element.