

# NUMBER 13-23-00517-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**ROBERT SEKULA AND JESSICA
SEKULA,**                                         **Appellants,**

**v.**

**B&M VACATION PROPERTIES,
LLC,**                                            **Appellee.**

---

## ON APPEAL FROM THE 2ND 25TH DISTRICT COURT
## OF GUADALUPE COUNTY, TEXAS

---

# MEMORANDUM OPINION

**Before Justices Silva, Peña, and West
Memorandum Opinion by Justice West**

This suit involves damages to a home appellants Robert Sekula and Jessica Sekula purchased from appellee B&M Vacation Properties, LLC.[1] By three issues which we reorder and construe as two, the Sekulas argue that the trial court erred when it granted B&M's (1) objections to their summary judgment evidence and (2) motion for summary judgment. Because some of the complained-of evidence was improperly excluded, we hold that the trial court erred in part when it granted B&M's objections to the Sekulas' evidence. In considering that evidence, we hold that the Sekulas raised a genuine issue of material fact as to each element of its breach of contract claim, and the trial court erred when it granted B&M's motion for summary judgment on that claim. We affirm in part and reverse and remand in part.

## I. BACKGROUND

In March of 2017, the Sekulas purchased a home from B&M. Prior to closing, the Sekulas hired Your Time Home Inspections (YTHI) to inspect the home and provide a report. YTHI's report marked the home's "[c]ooling [e]quipment" as "deficient." It stated that various parts of the HVAC system needed work: the "[e]vaporator coils need[ed] cleaning," the "[a]ir handler plenum was not properly sealed," the "[c]ondensate line terminates were too close to [the] structure," "[t]here was debris in the vents," the "[c]ondenser unit coil fins [were] damaged/dirty," and the "[s]ystem showed signs of being dirty." The report recommended "that the air conditioner's primary condensate drain lines

---

[1] This case is before the Court on transfer from the Fourth Court of Appeals pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. §§ 22.220(a) (delineating the jurisdiction of appellate courts), 73.001 (granting the supreme court the authority to transfer cases from one court of appeals to another at any time that there is "good cause" for the transfer). We are bound by the precedent of the transferring court to the extent that it differs from our own. *See* TEX. R. APP. P. 41.3.

be flushed of bacterial clogs" and "that a licensed HVAC technician inspect, clean[,] and service the entire climate control system." The report emphasized that YTHI inspectors "are not HVAC professionals," and inspectors "are not required to inspect . . . parts which are not readily accessible."

Subsequently, on March 18, 2017, the parties executed an amendment to the contract that obligated B&M, at its expense, to replace the roof and "[h]ave [the] HVAC cleaned, serviced, and repaired." B&M hired Tri Star A/C & Heating to perform the work on the HVAC system. Tri Star provided B&M with an invoice for work performed on March 20, 2017. The invoice stated: "Service[d] both systems. Checked systems, refrigerant pressures, evaporator coils & blowers, flushed drain lines and cleaned condensers." The Sekulas closed on the purchase of the home on April 20, 2017.

The Sekulas filed their original petition against B&M on April 18, 2019, alleging that B&M failed to clean, service, and repair the HVAC system prior to closing.[2] Relevant to this appeal, they asserted claims for (1) breach of contract, (2) "laundry-list" violations of the Texas Deceptive Trade Practices Act (DTPA), (3) negligent misrepresentation, (4) common law fraud, and (5) fraud in a real estate transaction.[3] B&M filed an answer and an amended answer.

No other motions or pleadings were filed until August 8, 2023, when B&M filed a partial no-evidence and traditional motion for summary judgment.[4] B&M asserted that

---

[2] The Sekulas also sued B&M's realtor and broker, who are not parties to this appeal.

[3] The Sekulas also filed claims against B&M for unconscionable actions and breach of implied warranties under the DTPA and fraud by nondisclosure. The Sekulas are not challenging the dismissal of these causes of action on appeal.

[4] B&M sought summary judgment over all the Sekula' claims, leaving only the issue of attorney's fees to be awarded.

"[n]either B&M nor its realtor, Patti McDaniel, had any direction over how Tri-Star performed its work on the HVAC system." It argued that the Sekulas failed to prove "justifiable reliance or causation" as to their claims of fraud, negligent misrepresentation, and DTPA violations. It also argued that the Sekulas presented no evidence of various elements of all their claims.

As to its arguments under its traditional motion for summary judgment, B&M contended that the Sekulas interfered with the performance of the contract which excused further performance. Attached to B&M's motion was an email exchange between McDaniel and Martin Tirado, the Sekulas' realtor. On June 6, 2017, Tirado wrote,

> We only want the HVAC system to perform properly as requested [i]n the contract and have all the servicing completed by either the HVAC company or the seller['s] expense.
>
> We are not asking for more we just want to have this completed and resolve[d] as soon as possible.
>
> We are going to have a third party HVAC technician inspect the unit to [e]nsure that the work is done properly.

McDaniel responded and asked,

> I just want to make sure I understand and clarify what your buyer is wanting. Tri Star is going to come back out and clean the inside coils on both units, because the HVAC company hired to clean and service the units did not clean the inside coils on the original visit, which my seller and I were unaware of. Once that has been completed, you are not asking for any other work to be done or completed.

Tirado responded, "Agreed." According to Tri Star's business records, Tri Star made an appointment with the Sekulas to clean the coils on June 9, 2017, and the Sekulas cancelled the appointment and never rescheduled.

The Sekulas filed a response which included, among other exhibits, an affidavit by Mr. Sekula and emails from the Sekulas and the parties' realtors (Exhibit B). According

4

to Mr. Sekula's affidavit, on May 18, 2017, Mrs. Sekula "discovered an active water leak coming through the downstairs ceiling in a small storage room," and the "leak caused damage to the [downstairs] ceiling." The source of the water came from "moisture" from the downstairs HVAC system. Mr. Sekula called Tri Star to come back to the house to examine the downstairs HVAC system, and Tri Star employees "Robert," "Levi," and "Stanley Williams" came to the property on May 25, 2017. The affidavit included incriminating statements from all three Tri Star employees. The Sekulas then hired three different HVAC companies to inspect the HVAC system, and relying on their quotes, paid approximately $60,000 to completely replace the HVAC system. Mr. Sekula contended that he and his wife would not have closed on the house if they knew B&M "failed on their promise to clean, service, and repair the HVAC system." His affidavit also included statements from Tirado's assistant, "Mark from Cook's Plumbing," and the three HVAC companies "GVEC," "We Fix It," and "Restore It Home Services."

B&M filed objections to much of the Sekulas' proffered evidence. It argued that all the alleged statements from the Tri Star employees and other witnesses were inadmissible hearsay, and the emails in Exhibit B were all inadmissible hearsay, absent statements from "[Mr.] Sekula or an agent of B&M." After a hearing on the motions, the trial court sustained B&M's objections and granted B&M's motion for summary judgment. In its order, it excluded the following:

- The alleged statements, wherever they appear, of all employees and representatives of Tri Star A/C & Heating except for those statements contained in the business records attached to Exhibit C to [B&M]'s First Amended Motion for Partial Summary judgment.

- The alleged statement, wherever it appears, of Stanley Williams that "oftentimes B&M instructed Tri Star not to perform certain work to

5

HVAC systems that would be more costly to B&M" and any variations of that alleged statement.

- The entirety of Exhibit B to [the Sekulas'] Response to [B&M]'s First Amended Motion for Partial Summary Judgment except for those statements that were made by either [Mr.] Sekula or an agent of [B&M].

- The alleged statements, wherever they appear, of Cook's Plumbing, GVEC, We Fix It, and Restore It Home Services, or any of their employees or representatives.

This appeal followed.

## II.  DISCUSSION

The Sekulas argue that the trial court erred when it granted B&M's objections to the evidence in the Sekulas' response and its motion for summary judgment. B&M did not file an appellate brief. We address these issues together.

## A.  Standard of Review & Applicable Law

We review the grant or denial of a summary judgment de novo. *Scripps NP Operating, LLC v. Carter*, 573 S.W.3d 781, 790 (Tex. 2019). If, as in this case, a party moves for a no-evidence summary judgment and a traditional summary judgment, we first review the trial court's judgment under the no-evidence standard. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). Under the no-evidence standard, the non-movant must produce more than a scintilla of probative evidence to raise a genuine issue of material fact on the challenged element. *Id*. "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)). "More than a scintilla of evidence exists when the evidence 'rises to a level that would enable reasonable and fair-

6

minded people to differ in their conclusions.'" *Id.* (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)).

The burden of producing evidence is entirely on the non-movant; if the non-movant produces evidence to raise a genuine issue of material fact, summary judgment is improper. TEX. R. CIV. P. 166a(i). If the non-movant fails to produce more than a scintilla of evidence under the no-evidence burden, there is no need to analyze whether the movant's summary-judgment evidence satisfies the traditional Rule 166a(c) burden. *Ford Motor Co.*, 135 S.W.3d at 600. We examine the record in the light most favorable to the non-movant, disregarding all contrary evidence and inferences. *King Ranch, Inc.*, 118 S.W.3d at 751.

To prevail under the traditional summary judgment standard, the movant has the burden to establish that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *ConocoPhillips Co. v. Koopmann*, 547 S.W.3d 858, 865 (Tex. 2018). The defendant must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010); *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). If the movant meets its summary judgment burden, then the burden shifts to the nonmovant to present to the trial court any issues or evidence that would preclude the grant of summary judgment. *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 511 (Tex. 2014); *Rhone–Poulenc, Inc. v. Steel,* 997 S.W.2d 217, 222 (Tex. 1999). Where, as here, "the trial court's order does not specify the grounds for its summary judgment, we must affirm the summary judgment if any of the theories presented to the trial court and

7

preserved for appellate review are meritorious." *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003).

We review evidentiary rulings made in connection with a summary judgment motion under the abuse of discretion standard. *Starwood Mgmt. LLC v. Swaim*, 530 S.W.3d 673, 678 (Tex. 2017) (per curiam). A trial court abuses its discretion when it acts "without any guiding rules or principles." *Id.* (quoting *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)).

## B.    Evidentiary Objections

The trial court excluded much of the evidence attached to the Sekulas' response to B&M's motion for summary judgment, but the Sekulas only challenge on appeal the exclusion of the statements by Tri Star employees Robert, Levi, and Williams. The following are the excluded statements as they appear in Mr. Sekula's affidavit:

> I told [Robert and Levi] that air leaks were identified during the home inspection and that there was evidence of damage done by unknown rodents and pests. Robert and Levi confirmed this to me through their visual inspection. Robert and Levi applied a sealant to the interior of the duct system to help mitigate the air leaks and replaced foam insulation on a section of copper line. . . .
>
> Robert and Levi informed me that they had performed the work at the Property on the HVAC system on March 20. Robert and Levi told me that, while they were attempting to service the downstairs system, they were being "eaten alive" by fleas[,] and they told me that they did not do any work on [the] downstairs HVAC system inside. I asked them directly if they cleaned the interior condensing coils in the system. Tri Star's Robert and Levi admitted to me that they did not clean the interior coils. They stated that they had only cleaned the evaporator coils in the outside compressor unit.
>
> Robert and Levi then (on the May 25 visit) confirmed that the drip pan was completely dry and they were not sure what the issue might be causing the moisture in the ceiling and walls, but that they suspected the drain line might be damaged or clogged. . . . Robert and Levi told me that

their supervisor [Williams] would need to come out to examine the system with his expertise for a more proper diagnosis of the issues involved with the system. This indicated to me that Tri Star did not evaluate the HVAC system on the March 20 in order to determine what needed to be serviced or repaired on that date.

Also on that same day (May 25), . . . . [Williams] arrived from Tri Star to evaluate and diagnose the problems regarding the downstairs HVAC system. [Williams] looked over the system thoroughly and showed me where animals had damaged and destroyed duct work and had nested and defecated in the main air duct. The damage had not been repaired[,] and the animal droppings had not been cleaned from the ducts on March 20.

[Williams] commented to me that he suspected that the copper line running to the exterior of the house needed to be re-insulated, and that the drain line from the unit might be clogged. He stated that the drain line was visibly damaged and broken. He also told me that the interior condensing coils were extremely dirty and that Tri Star had not cleaned them. [Williams] said that the dirty coils could be exacerbating the moisture problem and that the entire system would need to be pulled out in order to properly clean and repair it. He also recommended that the air ducts be completely replaced not only for proper functionality but for health reasons. . . .

[Williams] told me that he had done the original inst[a]llation of the HVAC systems at the Property many years ago. He further told me that he had a lot of personal knowledge through previous business dealings with B&M and B&M's agents. [Williams] told me that oftentimes B&M instructed Tri Star not to perform certain work to HVAC systems that would be more costly to B&M.

The Sekulas argue that the Tri Star employees' statements are admissible under Rule 803(24), the "statements against interest" exception. *See* TEX. R. EVID. 803(24)(A). The Rule provides that a statement is not excluded by the general rule against hearsay if it is a statement that

a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability or to make the declarant an object of hatred, ridicule, or disgrace[.]

*Id.* This exception "is founded on the principle that the ramifications of making a statement is so contrary to the declarant's interest that he would not make the statement unless it was true." *Robinson v. Harkins & Co.*, 711 S.W.2d 619, 621 (Tex. 1986). "There are three general interests considered under the rule: pecuniary, penal, and social." *Id.* "Thus, while a particular statement may be self-serving in one respect, it may simultaneously be contrary to another interest." *Id.* "Admissibility, then, necessarily requires a weighing and balancing of competing interests." *Id.*; *see Beebe v. City of San Antonio ex rel. CPS Energy*, 673 S.W.3d 691, 702 (Tex. App.—San Antonio 2023, pet. denied) (citing *Robinson*, 711 S.W.2d at 621).

According to Mr. Sekula's affidavit, the Tri Star employees made statements that directly contradicted the March 20, 2017 invoice. The invoice stated that Tri Star "[s]ervice[d] both systems," "[c]hecked systems, refrigerant pressures, evaporator coils & blowers," "flushed drain lines," and "cleaned condensers." Robert and Levi allegedly admitted that they did not service or check the downstairs HVAC system and had not cleared or "flushed" the drain line. Williams stated that Tri Star had not cleaned or cleared the downstairs HVAC system's "interior condensing coils." Robert, Levi, and Williams also discussed obvious issues with the downstairs HVAC system with Mr. Sekula, including that the system was infested with fleas, animal feces were in the air ducts, and "the drain line was visibly damaged and broken."

These statements by Robert, Levi, and Williams go against Tri Star's pecuniary and social interests. By admitting that Tri Star failed to service and clean the downstairs HVAC system and flush the drain line, Tri Star subjected itself to potential liability from the Sekulas, and potentially, B&M. *See Robinson*, 711 S.W.2d at 621 ("By admitting to

10

be the driver, Jerry subjected himself to potential liability for negligence, which is against his pecuniary interest."); *see also Keeney v. Williams*, No. 07-19-00374-CV, 2020 WL 5267568, at *4 (Tex. App.—Amarillo Sept. 3, 2020, no pet.) (mem. op.) (holding that trial court did not abuse its discretion in admitting hearsay statements because the statements fell under 803(24) as they were "clearly against [the declarant's] ownership interest"); *McCurry v. Farmer*, No. 06-17-00052-CV, 2017 WL 5907712, at *4 (Tex. App.—Texarkana Dec. 1, 2017, no pet.) (mem. op.) (same, where declarant's "statements were contrary to his proprietary and pecuniary interests" and "tended to confirm" the oral agreement at issue). Tri Star also potentially engaged in fraudulent behavior by admitting it did not perform the work it represented in the March 20 invoice, which not only could subject it to liability but could lead to revocation of its state-issued HVAC license.

However, Williams' statement that "oftentimes B&M instructed Tri Star not to perform certain work to HVAC systems that would be more costly to B&M" does not fall under the hearsay exception because it does not go against Tri Star's interests. *See* TEX. R. EVID. 803(24)(A) (stating that the rule applies when the declarant's statement is "so contrary to *the declarant's* proprietary or pecuniary interest"). The Sekulas contend that the statement goes against B&M's interest because it "explains why Tri Star would . . . fail to properly service the HVAC system and then provide an invoice inaccurately representing that the HVAC system was indeed serviced." However, the Sekulas fail to explain how this statement goes against Tri Star's interests. *See id.*; *see also City of Whitesboro v. Montgomery*, No. 05-23-00979-CV, 2024 WL 3880627, at *5 (Tex. App.—Dallas Aug. 20, 2024, no pet.) (mem. op.) (holding that the alleged statements did not fall under Rule 803(24) in part because the declarant "had no proprietary interest in the

11

facilities [at issue], and was not employed by the City"). In fact, as the Sekulas concede, Williams' statement is favorable to Tri Star's interests because his statement indicates that Tri Star and its employees were not negligent—rather, they were performing the work as B&M instructed it to. *See Robinson*, 711 S.W.2d at 621; *Urquhart v. Antrum*, 776 S.W.2d 595, 597 (Tex. App.—Houston [14th Dist.] 1988, no writ) (holding that statement did not fall under Rule 803(24) exception because "the overriding thrust of [the declarant's] statement [wa]s exculpatory because it . . . shift[ed] blame for the accident" away from the declarant); *see also Milam v. Dir., TDCJ-CID*, No. 4:13-CV-545, 2017 WL 3537272, at *18 (E.D. Tex. Aug. 16, 2017) (mem. op.) (providing that, generally, statements against interest which shift blame from the declarant to another are not admissible under the rule).

In sum, we hold that the trial court erred when it excluded the alleged statements in Mr. Sekula's affidavit by Tri Star employees Robert, Levi, and Williams about the overall condition of the HVAC system and the work they did not perform on the downstairs HVAC system because these statements fall under Rule 803(24). *See* TEX. R. EVID. 803(24)(A); *Robinson*, 711 S.W.2d at 621; *see also City of Whitesboro*, 2024 WL 3880627, at *5; *Keeney*, 2020 WL 5267568, at *4; *McCurry*, 2017 WL 5907712, at *4. We hold that the trial court did not err when it excluded Williams' statement that "oftentimes B&M instructed Tri Star not to perform certain work to HVAC systems that would be more costly to B&M" because it does not fall under Rule 803(24). *See* TEX. R. EVID. 803(24)(A); *Robinson*, 711 S.W.2d at 621; *Urquhart*, 776 S.W.2d at 597; *see also Milam*, 2017 WL 3537272, at *18. We sustain the Sekulas' first issue in part.

**C.     Summary Judgment**

The Sekulas sued B&M for (1) breach of contract, (2) "laundry list" violations under the Texas Deceptive Trade Practices Act (DTPA), (3) negligent misrepresentation, (4) common law fraud, and (5) fraud in a real estate transaction.

**i.     Breach of Contract**

To prevail on a cause of action for breach of contract, the plaintiff must prove: "(1) a valid contract exists; (2) the plaintiff performed or tendered performance as contractually required; (3) the defendant breached the contract by failing to perform or tender performance as contractually required; and (4) the plaintiff sustained damages due to the breach." *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019). It is undisputed that the parties entered into a valid contract, and the contract included an amendment that required B&M, at its own expense, to clean, service, and repair the HVAC system. The Sekulas performed under the contract by purchasing the home. Above, admissions from the three Tri Star employees indicate that it did not clean, service, or repair the downstairs HVAC system prior to closing. At the trial level, B&M did not dispute the evidence that the Sekulas paid $60,000 to replace the home's HVAC system. Looking at the evidence in the light most favorable to the Sekulas, as we must, *King Ranch, Inc.*, 118 S.W.3d at 751, we hold that they produced more than a scintilla of evidence of each element of their breach of contract claim. We conclude that the trial court erred when it granted B&M's no-evidence motion for summary judgment as to the Sekulas' breach of contract claim.

In its traditional motion for summary judgment, B&M argued that it was excused from further performance under the contract. Relying on *SP Terrace, L.P. v. Meritage*

13

*Homes of Tex., LLC*, B&M argued that courts generally "imply a duty to cooperate to the extent necessary for the contract's performance," and the Sekulas violated that duty and interfered with B&M's performance by preventing Tri Star from returning to the property. 334 S.W.3d 275, 286 (Tex. App.—Houston [1st Dist.] 2010, no pet.). B&M presented evidence—which the Sekulas do not dispute—that the Sekulas' realtor agreed to have Tri Star come back out to the property to "clean the inside coils on both units," and the Sekulas cancelled that appointment.

However, that same evidence also shows that the Sekulas requested that the HVAC system "perform properly as requested [i]n the contract," that "all the servicing [be] completed by either the HVAC company or [B&M's] expense," and that the Sekulas were "going to have a third[-]party HVAC technician inspect the unit to [e]nsure that the work is done properly." Once the Sekulas hired third-party HVAC companies to assess the HVAC system, they determined that the HVAC system needed to be completely replaced. Clearly, the HVAC system would not be fixed by simply cleaning the interior coils of the downstairs HVAC system. Moreover, the Sekulas presented evidence that B&M breached the contract by failing to clean, service, and repair the HVAC system before closing. While some evidence may suggest that the Sekulas hindered B&M's performance, other evidence indicates that B&M materially breached the contract and the Sekulas are merely attempting to enforce specific performance under the contract.

We agree with the Sekulas that the evidence presented raises a genuine issue of material fact concerning whether the Sekulas interfered with B&M's performance of the contract and whether further performance by B&M was excused. We conclude that the

14

trial court erred when it granted traditional motion for summary judgment as to the Sekulas' breach of contract claim. We sustain this sub-issue.[5]

### ii.     DTPA, Fraud, and Negligent Misrepresentation Claims

Next, the Sekulas alleged that B&M engaged in false, misleading or deceptive acts in violation of the DTPA. Generally, to establish a cause of action under the DTPA, the plaintiff must establish that:

(1)     the plaintiff is a consumer;

(2)     the defendant engaged in false, misleading, or deceptive acts (i.e., violated a specific laundry-list provision of the DTPA); and

(3)     the deceptive act or laundry-list violation was a producing cause of the plaintiff's injury.

*Doe v. Boys Clubs of Greater Dall., Inc.*, 907 S.W.2d 472, 478 (Tex. 1995); *see* TEX. BUS. & COM. CODE ANN. § 17.46(b). In its no-evidence motion for summary judgment, B&M argued that the Sekulas failed to produce more than a scintilla of evidence of the second and third elements.

The Sekulas contend that they produced more than a scintilla of evidence showing that B&M engaged in a false, misleading or deceptive act in violation of § 17.46 of the DTPA because B&M misrepresented the work performed on the home's HVAC system. The Sekulas rely on the Tri Star March 20 invoice, and the following evidence to support their argument:

- A memo from Williams that states:

---

[5] B&M generally argued in its motion for summary judgment that it had no control over Tri Star's work on the HVAC system. However, "[g]enerally speaking, a party cannot escape its obligations under a contract merely by assigning the contract to a third party." *Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 346–47 (Tex. 2006).

> Tri Star A/C was called out to [the property] on March 20, 2017 to service two A/C systems to included [sic] checking refrigerant pressure (okay), checked evaporator coils (Tech said didn't think they needed to be cleaned at that day), cleared drain lines and cleaned outside condenser coils. . . . No damage was done from coils, but we have agreed to clean both evaporator coils for a reduced price

- An email from McDaniels email to Tirado that states:

> Tri Star is going to come back out and clean the inside coils on both units, because the HVAC company hired to clean and service the units did not clean the inside coils on the original visit,[6] which my seller or I were not aware of.

The Sekulas argue that this evidence amounts to "more than a scintilla of evidence showing an actionable DTPA misrepresentation." The Sekulas provide no authority for their argument.

In the seller's disclosure notice, B&M indicated that it had no knowledge of the condition of the HVAC system. It was only after the Sekulas hired YTHI to inspect the home that the parties entered into an agreement to have B&M clean, service, and repair the HVAC system. B&M presented sworn declarations from its representative, Daryl Mason, that he had never been on the property, and he had no knowledge of the HVAC system's condition. B&M also presented emails from McDaniels wherein she stated that she and B&M did not know that Tri Star had not completed the work described in the March 20 invoice.

Despite the Sekulas' arguments, the record contains no evidence, direct or circumstantial, that B&M knew Tri Star did not service the downstairs HVAC system prior

---

[6] "[T]he HVAC company hired to clean and service the units did not clean the inside coils on the original visit" was also Tri Star.

to closing. Instead, the record shows that, like the Sekulas, B&M relied on Tri Star's representations of their work on the HVAC system to satisfy their obligations under the contract. Here, the most misleading statement that B&M is accused of making is that it fulfilled its end of the contract. This by itself is insufficient to show actionable misrepresentation under the DTPA. *See Cont'l Dredging, Inc. v. De-Kaizered, Inc.*, 120 S.W.3d 380, 390 (Tex. App.—Texarkana 2003, pet. denied) ("The most misleading statement Continental is accused of making is that the contract had been completed when it allegedly had not been. As such, Continental's misrepresentations gave rise only to a breach of contract, not a DTPA violation . . . ."); *Head v. U.S. Inspect DFW, Inc.*, 159 S.W.3d 731, 742–43 (Tex. App.—Fort Worth 2005, no pet.); *Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd.*, 896 S.W.2d 156, 162 (Tex. 1995) ("Even under the DTPA, a seller is not liable for failing to disclose information he did not actually know."); *see also Dura-Wood Treating Co. v. Century Forest Indus., Inc.*, 675 F.2d 745, 756 (5th Cir. 1982) ("[A]n allegation of breach of contract—without more—does not constitute a false, misleading, or deceptive action such as would violate [§] 17.46 of the DTPA.").

Relying on the same evidence, the Sekulas argue that they produced more than a scintilla of evidence on each element of their claims for negligent misrepresentation, common law fraud, and fraud in a real estate transaction. Like their DTPA claim, these causes require an element that the defendant knew the information or representation was false. *See Willis v. Marshall*, 401 S.W.3d 689, 698 (Tex. App.—El Paso 2013, no pet.) (providing elements of negligent misrepresentation); *Nooner Holdings, Ltd. v. Abilene Vill., LLC*, 668 S.W.3d 956, 963 (Tex. App.—Eastland 2023, pet. denied) (providing elements of common law fraud and statutory fraud claim based on a real estate

17

transaction). Again, the record contains no evidence that B&M knew Tri Star did not properly service the downstairs HVAC system prior to closing, and the Sekulas provide no authority as to how B&M's actions could amount to actionable misrepresentation under these causes of actions. *See Prudential Ins. Co. of Am.*, 896 S.W.2d at 163 ("A statement is not fraudulent unless the maker knew it was false when he made it or made it recklessly without knowledge of the truth."). We overrule these sub-issues.

In sum, we hold that the trial court erred in granting B&M's motion for summary judgment as to the Sekulas' breach of contract claim only. Accordingly, we sustain the Sekulas' second issue in part.[7]

### III. CONCLUSION

We hold that the trial court erred in part when it excluded material statements from the Sekulas' evidence from three Tri Star employees related to the work (or lack of work) performed on the home's HVAC system. Considering this evidence creates a genuine issue of material fact as to the Sekulas' breach of contract claim, and we reverse and remand the trial court's order granting B&M's motion for summary judgment as to that claim only. We affirm the trial court's judgment in all other respects.

JON WEST
Justice

Delivered and filed on the
11th day of December, 2025.

---

[7] The Sekulas include "[i]ntentional and knowing violations of the DTPA" as a sixth cause of action. They do not explain how "intentional and knowing behavior" under the DTPA is a separate cause of action from their other DTPA claim. Instead, they argue that in the event we find that the trial court improperly excluded the statements made by Tri Star employees, Robert, Levi, and Williams, then they produced "more than a scintilla of evidence that [B&M]'s actions in this case were intentional and knowing." Because we held that, even with the included statements from Tri Star, the Sekulas failed to produce more than a scintilla of evidence showing that B&M engaged in a false, misleading or deceptive act in violation of § 17.46 of the DTPA, we overrule this issue.